PAYNE, Plaintiff in error, vs. THE STATE, Defendant in error.

*September 13—November 5, 1929.*

616

618

*W. B. Rubin* and *L. A. Schweichler,* both of Milwaukee, for the plaintiff in error.

For the defendant in error there was a brief by the *Attorney General, George A. Bowman,* district attorney of

Milwaukee county, and *George B. Skogmo* and *Louis S. Wiener,* assistant district attorneys, and oral argument by *Mr. Skogmo.*

OWEN, J.   It is earnestly contended that the killing was justifiable and that there is no evidence to support a verdict finding the defendant guilty of murder or manslaughter in any degree.   The court did submit to the jury the question of whether the killing was justifiable homicide.   The brief dwells at great length upon alleged errors committed by the court in submitting this question and in refusing to give requested instructions with reference thereto.

We have great doubt as to whether the evidence justified or required the submission of this question, but in view of the fact that we find no error in the manner of its submission we will not undertake a review of the evidence to determine whether it should have been submitted.   In submitting this question the court charged:

"If, from all the facts and circumstances in the case, the defendant had reasonable ground to apprehend a design on the part of Fate Palfray to commit a felony upon his wife by force and against her will, or to do her or the defendant some great personal injury, and the defendant had reasonable cause for believing that there was imminent danger of such design being accomplished, he had a right to act efficiently upon such reasonable apprehension and employ what to him at the time honestly seemed necessary to that end, even to taking of the life of Fate Palfray."

·   This instruction is criticised because it eliminates all felonies other than "by force and against her will."   By numerous written requests submitted by the defendant to the court it was urged to charge the jury, in effect, that the defendant was justified in the shooting in order to prevent the commission of the crime of adultery.   Such a rule would authorize the killing by a husband of his wife and her paramour at any time when he apprehended them in an adulterous

act. As will hereinafter be shown, this rule which obtained among ancient peoples has been thoroughly repudiated by the Anglo-Saxon race, and it has never been held by any English-speaking court that an outraged husband may take the law into his own hands and slay his wife or her paramour under such circumstances, unless it be in the state of Texas, where the statutes declare this to be justifiable homicide.

At common law the prevention of crime is a recognized excuse for the taking of human life. "Such homicide as is committed for the prevention of any forcible and atrocious crime has been considered as justifiable from the earliest days of the common law. . . . The crimes in prevention of which life may be taken are such and only such as are committed by forcible means, violence, and surprise. While most felonies are within this class of crimes, the right to take life to prevent felony does not authorize the killing of persons attempting secret felonies not accompanied by force. The killing is excusable when done to prevent murder, robbery, burglary, rape, or arson." 13 Ruling Case Law, p. 807.

Sec. 340.29, Stats., enumerates the cases in which homicide is justified. The following instances are the only ones which under any circumstances can be applicable to this situation, or which may be invoked by the defendant: (1) When resisting any attempt to murder such person, or to commit any felony upon him or upon or in any dwelling house in which such person may be; or (2) when committed in the lawful defense of such person or of his wife when there shall be any reasonable ground to apprehend 'design to commit a felony or to do some great personal injury, and there shall be reasonable cause for believing that there is imminent danger of such design being accomplished.    —

The principles of the common law should be borne in mind in construing this section of the statutes. In fact, the statute itself imports such principles. It justifies a homicide when *resisting* any attempt to commit any felony and when

committed in the lawful defense of such person or of his wife. In *Duthey v. State,* 131 Wis. 178, 185, 111 N. W. 222, it is said that each phase of justifiable homicide defined in this section involves some element of self-defense or enforcement of a duty. It is well known that the purpose of the statute describing various degrees of homicide was not to abrogate the common law, but, among other things, as a convenience in fixing penalties. Our statute with reference to justifiable or excusable homicide, therefore, should not be declared to be in derogation of the common law. Furthermore, "the taking of human life is a matter of such terrible significance that it cannot be justified by some slight appearance of danger." *Richards v. State,* 82 Wis. 172, 182, 51 N. W. 652.

It is this principle pervading the criminal law which confines the right to kill to prevent only those felonies characterized by violence and surprise. Because of these considerations the right to kill has never been conceded to the outraged husband who has discovered his wife in the act of adultery, and the charge of the court limiting the right of the defendant to kill to prevent the commission of "a felony upon his wife by force and against her will" was correct. For the same reasons all of the requested instructions of the defendant were properly refused.

We come now to consider the question whether the conviction of the defendant of a higher degree of homicide than third-degree manslaughter finds support in the evidence. It is said by Blackstone that "If a man takes another in the act of adultery with his wife, and kills him directly on the spot, though this was allowed by the laws of Solon, as likewise by the Roman civil law (if the adulterer was found in the husband's own house), and also among the ancient Goths, yet in England it is not absolutely ranked in the class of justifiable homicide as in the case of a forcible rape, but it is manslaughter. It is, however, the lowest degree of it,

and, therefore, in such a case the court directed the burning in the hand to be gently inflicted because there could not be a greater provocation.", 4 Blackstone, Commentaries, 191. We find no disagreement on the part of the courts with reference to the rule prevailing in this country, which we find stated in *Hooks v. State,* 99 Ala. 166, 13 South. 767, to be that—

"Where one person detects another in the act of adultery with his wife, and immediately slays the adulterer or his wife, as matter of law the provocation is sufficient to reduce the killing to manslaughter. The law does not declare that anything less than actual sexual intercourse is a sufficient provocation, as a matter of law, to reduce the offense from murder to manslaughter. It may be that the detection of another under circumstances such as testified to by the defendant may provoke and engender passion to such a degree as to overthrow reason; and if, under the influence of passion thus aroused, he immediately attack the offending party, and slay him, before cooling time has intervened, not from malice or unlawful formed design, but from such passion, thus provoked, the offense may be manslaughter. Whether the party acted under the influence of such a passion, and whether the provocation was sufficient, and whether there had been 'cooling time,' are questions of fact to be determined by the jury. The principle we announce is that the law does not declare the provocation sufficient unless the parties are detected in the act; but a jury may say whether the compromising position of the parties was sufficient to arouse passion in the husband to such a degree as to overthrow reason, just as a jury may say, in some other cases, whether the offense was the result of sudden and sufficient provocation to reduce the offense from murder to manslaughter."

See, also, 1 Wharton, Crim. Law (10th ed.) § 459; 2 Bishop, Crim. Law (9th ed.) § 708; 13 Ruling Case Law, p. 809; 29 Corp. Jur. p. 1142; 92 Am. St. Rep. 214 (note); *McNeill v. State,* 102 Ala. 121, 15 South. 352; *Rowland v. Mississippi,* 83 Miss. 483, 35 South. 826; *State v. John,* 30 N. C. 330; *State v. Samuel,* 48 N. C. 74; *State v. Young,* 52

Oreg. 227, 96 Pac. 1067; *State v. Yanz,* 74 Conn. 177, 50 Atl. 37, 54 L. R. A. 780.

We find in the decisions some relaxation in the rigid declaration that in order to reduce the killing to manslaughter the husband must apprehend them in the very act, and some courts seem to hold that if the guilty parties are discovered under circumstances justifying a belief to a reasonable certainty that they have recently completed the copulative act, then the rule is the same as though he had discovered them in the physical copulative act. *State v. Harman,* 78 N. C. 515; *Mays v. State,* 88 Ga. 399, 14 S. E. 560; *State v. Chiles,* 58 S. C. 47, 36 S. E. 496. However, in this case these refinements need not be considered, because the evidence does not establish the fact that adultery was committed, and by the evidence of the defendant himself, given upon the trial, he did not entertain such a belief. He testified at the trial, evidently for the purpose of establishing justifiable homicide, to a belief that Palfray was attempting rape upon his wife, that he shot at him in an attempt to prevent the commission of the crime, and shot his wife because Palfray pulled defendant's wife in front of him for his protection. The trial court could have done no more under the facts and circumstances in this case than to submit to the jury the question whether under all the facts and circumstances of the case the offense constituted manslaughter in the third degree. This of course the jury negatived by finding the defendant guilty of murder in the second degree.

We come now to a consideration of whether the evidence sustains the conviction of murder in the second degree. We have already determined that the jury was not compelled at least to find that the killing was justifiable, and that the court could not say that it constituted no higher offense than that of manslaughter in the third degree. We think the evidence detailed in the statement of facts would have justified the jury in finding the defendant guilty of murder in the first degree. If the evidence justified such a finding

the defendant has no right to complain if the jury has found him guilty of murder in the second degree. *Lasecki v. State,* 190 Wis. 274, 208 N. W. 868.

. Certain procedural errors have been assigned and discussed which we deem worthy of consideration. After the jury had been in deliberation for some time they returned into court, when the following proceedings were had:

"Foreman: Your Honor, the jury wants information on what constitutes a felony, and the interpretation of the law relating to justifiable and excusable homicide, and I understand your instructions to the jury as follows: that we are to be unanimous guilty or not guilty on first-degree murder before passing on the other verdicts in the consecutive order given.

"Court: I will have the reporter read to you the instructions on justifiable and excusable homicide, and if you will listen carefully to those instructions I think that your questions will be answered. (The reporter then read the instructions on justifiable and excusable homicide as heretofore given.)

"Court: The term 'felony' when used in any statute shall be construed to mean an offense for which the offender on conviction shall be liable by law to be punished by imprisonment in the state's prison. You have before you various degrees of murder and manslaughter and have before you the proper instructions on excusable homicide and justifiable homicide. Is there anything else that you desire?

"Foreman: The second part of our request I take it your instructions to mean that we are to pass upon first-degree murder guilty or not guilty unanimously before passing upon the second of the verdicts as given by you. We have here five different verdicts, and we are to pass on one guilty or not guilty in the first degree before we can pass on to the rest?

"Court: No, you are supposed to reach a common understanding or agreement as to what offense, if any, the defendant was guilty of.

"Foreman: How are we to proceed?

"Court: Proceed in the order that you were given in the instructions. You were there instructed if you find that the act of the defendant in killing his wife was excusable that

then you should find him not guilty. You were then instructed to consider whether or not he was guilty of any one of the four degrees of murder or manslaughter that the court submitted to you, and you are to reach an agreement if possible determining of what offense the defendant is guilty.

"Foreman: Are we to take these up at one time or one at a time?

"Court: You are to proceed and take them up in order, the order given you by the court.

"Foreman: In other words, we are to determine on the first one whether he is guilty or not guilty of that unanimously?

"Court: Yes, your verdict must be unanimous; on any agreement that you come to your verdict will have to be unanimous.

"Foreman: There seems to be a little confusion on that point. Are we to take these all up at one time or one at a time?

"Court: You have the various instructions of the court before you on the various degrees; you can consider them all together and consider them in the light of the instructions on justifiable and excusable homicide."

Defendant contends that this colloquy left with the jury the impression that before they could proceed to consider, for instance, whether the defendant was guilty of murder in the second degree, it was necessary for them to unanimously agree that he was not guilty of murder in the first degree, and so on, through the entire verdict. The colloquy makes it plain that the jury were very much in doubt as to how they should proceed in their consideration of the case. It will be noticed that the foreman of the jury was persistent in securing from the court a definite instruction as to their method of procedure. It is contended by the defendant that the answer of the court along towards the end of the colloquy, "Yes, your verdict must be unanimous; on any agreement that you come to your verdict will have to be unanimous," left the jury with the impression above indicated. However, the colloquy did not end there. That statement did not satisfy the foreman. After that statement was made,

the foreman again said: "There seems to be a little confusion on that point. Are we to take these all up at one time or one at a time?" to which the court replied: "You have the various instructions of the court before you on the various degrees; you can consider them all together and consider them in the light of the instructions on justifiable and excusable homicide." This was the last instruction of the court, and this seemed to satisfy the foreman. Here the court told them that they were to consider all of the various degrees, and the instructions upon them, and consider them in the light of the instructions on justifiable and excusable homicide. When we consider that the foreman was not satisfied with the statement of the court upon which defendant relies, but that he was satisfied with the succeeding statement, which was the last instruction of the court, and which instruction it seems to us was altogether correct and entirely immune from the criticism which the defendant makes of the remark of the court upon which reliance is placed, it follows that there is no room to say that the impression with which the jury returned to the jury room was that they could not consider the lower degrees until they had unanimously agreed that he was not guilty of a higher degree. We do not consider the prejudicial effect of the remark of the court criticised, because it is apparent to us that the impression left by that remark was not the final impression of the jury upon that question.

As already stated, the defendant made statements to police officers and the district attorney shortly after his arrest. The shorthand notes of the stenographer who took these statements and her typewritten transcript thereof were introduced in evidence. This was also true of a statement made by Palfray in the presence of the defendant at the emergency hospital, the latter being introduced for the purpose of impeachment. The jury were permitted to take these statements into the jury room. This is assigned as error.

It is manifest that in so far as the declarations of the defendant made before the police officers and the district attorney conflict with the evidence given by him upon the trial, his statement made before the officers was constantly before the jury, while they were obliged to rely upon their memories with reference to his testimony given upon the trial. The conduct of a trial should be fair and impartial and advantage to either side should be avoided. It has been declared that a "trial judge should not, in charging the jury, give special significance to the evidence on one side of the controversy by speaking of it in detail, especially to those parts favorable to that side, while not mentioning the opposing evidence; nor should he so charge the jury as to refresh their memory as to what was testified to on one side of the controversy while not doing so as to what was testified to on the other." *Mahoney v. Kennedy,* 188 Wis. 30, 43, 205 N. W. 407; *Coman v. Wunderlich,* 122 Wis. 138, 99 N. W. 612. We have also held that it is improper for a trial court to define contributory negligence as any want of ordinary care no matter how slight, while defining the negligence of the defendant merely as any want of ordinary care. *Gherke v. Cochran,* 198 Wis. 34, 222 N. W. 304, 223 N. W. 425; *Kausch v. Chicago & M. E. R. Co.* 176 Wis. 21, 186 N. W. 257. While it is held that the matter of permitting exhibits to be taken to the jury room is a matter resting within the discretion of the trial court (*Wunderlich v. Palatine Fire Ins. Co.* 104 Wis. 382, 80 N. W. 467), attention should be paid to the nature of the exhibits. Generally there could be no harm in permitting a jury to refresh its memory with reference to the contents of a written instrument by an examination of the instrument. Where, however, the testimony bearing on one side of a controversy is in the form of a deposition or other written statement, and the testimony on the other resting entirely on parol evidence given in the court, it is obvious that to permit a jury to take the written portion of the testimony to the jury room,

compelling them to rely upon their memories for the testimony on the other side, gives one side of the controversy an undue advantage, and it would seem plain that such exhibits should not be permitted to be taken to the jury room. 2 Thompson, Trials (2d ed.) § 2578. While we must stamp the incident as error, we think it clear that it cannot be construed as prejudicial error.

The statement of the defendant, which was permitted to be taken to the jury room, is partially set forth in the statement of facts, and reveals the attitude of the defendant very shortly after the killing. He expressed no regret at killing his wife, he did not disclaim any purpose or intention of killing her. He claimed that it was justifiable, and if he had to do it over again he would do it if he knew he "would hang for it." He seemed to regard it not only as his privilege but as his duty. It plainly evidenced an intent necessary to constitute murder in the first degree. On the trial he did not deny the killing but defended it on the ground that it was a justifiable homicide. He did not claim that he committed the act in the heat of passion. In fact, he testified that his mind was all right until after he shot his wife. We have already indicated that the evidence establishing the defense of justification is so weak that it is questionable whether it should have been submitted to the jury. In view of the fact that the defense of justification is so weak, and that there was little if any pretense upon the trial that he acted in the heat of passion, it seems rather plain that the verdict of the jury was as favorable to him as it well could be. In this state of the evidence, it seems clear that the error in permitting the exhibits in question to be taken to the jury room was not prejudicial.

Other errors are assigned and discussed in the brief, but we do not consider them of sufficient merit to require treatment. It appears upon the whole case that justice has been done and that the judgment must be affirmed.

*By the Court.*—Judgment affirmed.