STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Thomas John RUTCHIK, Defendant-Appellant.

Supreme Court

*No. 81–2352–CR. Argued September 9, 1983.—
Decided January 4, 1984.*

(Also reported in 341 N.W.2d 639.)

62

For the plaintiff-respondent-petitioner the cause was argued by *David J. Becker,* assistant attorney general, with *Bronson C. La Follette,* attorney general, on the briefs.

For the defendant-appellant there was a brief and oral argument by *Steven P. Weiss,* assistant state public defender.

DAY, J. This is a review of a decision of the court of appeals reversing a judgment of the circuit court for Kenosha county, Hon. Michael S. Fisher, circuit judge, convicting Thomas J. Rutchik of burglary under sec.

943.10 (1) (a), Stats. 1979–80.[1]  Three issues are raised in this review: (1) Did the trial court err in admitting evidence of the nature of defendant's prior convictions? (2) Did the trial court's rulings on admission of other crimes evidence mislead the defendant and his counsel and thereby deny him effective assistance of counsel? and (3) Did the trial court err in sending a written transcript of a statement made by a prosecution witness to the jury? We conclude that evidence of defendant's previous convictions was properly admitted, and that the court's rulings on the matter did not deny the defendant effective assistance of counsel. We also conclude that the error, if any, in sending the transcript to the jury was harmless. We therefore reverse the decision of the court of appeals and reinstate the judgment of conviction.

At about 9:00 p.m. on the evening of February 28, 1981, Mr. and Mrs. George Foley returned home from attending funeral home visitation for Mrs. Foley's deceased sister, Marie Terrill. They were accompanied by two adult children, Mary Wynn and Robert Foley. Upon entering the house, Mrs. Wynn discovered that the front door was ajar and jewelry boxes were scattered about the floor of an upstairs bedroom. Mrs. Foley later determined that two of her necklaces were missing.

Meanwhile Robert Foley had gone around to a side door of the house with his brother-in-law when he noticed someone standing in the back yard. He ran toward the person, he later identified as the defendant, who fled down an alley. Robert Foley gave chase and caught up with the defendant after defendant had gotten into his

[1] "943.10  Burglary.  (1) Whoever intentionally enters any of the following places without the consent of the person in lawful possession and with intent to steal or commit a felony in such place is guilty of a Class C felony:

"(a)  Any building or dwelling."

car. Robert Foley asked the defendant what he had been doing in the Foley's back yard. The defendant responded that he was looking for his brother. Robert Foley took down the car's license number as it drove away. The car was registered in the name of defendant's father.

The defendant was arrested the next day and charged with burglary. At that time the defendant made a statement to the police in which he denied ever being in the alley or the Foley's yard. He was tried and convicted by a jury in the circuit court for Kenosha county on July 29, 1981. On August 20th, the court entered judgment on the verdict and sentenced the defendant to an indeterminate term not to exceed eight years in prison.

The first issue is whether the trial court properly admitted evidence concerning the nature of defendant's prior convictions.

In a pretrial motion *in limine,* the defendant requested a ruling to prohibit the state from raising the matter of defendant's prior criminal activity. The motion was apparently motivated by a statement in the complaint that the defendant had been convicted in 1978 of burglarizing a house left temporarily vacant while the occupants were attending a funeral. The complaint also recited a statement a friend of the defendant made to police at the time of defendant's arrest in 1978 in which she told police that the defendant told her he knew the house would be empty from having read an obituary in the newspaper.

The court granted the motion to prohibit other crimes evidence insofar as it related to the prosecution's case in chief. The court expressly stated, however, that "if something is brought up in the defendant's case which would permit testimony concerning other crimes, the court would not bar the state. But on the state's direct case, it would appear there would be no necessity to comment on or offer testimony in regard to other crimes." The

prosecution complied with the court's ruling and introduced no evidence of prior convictions in its case in chief.

The defendant testified in his own behalf. After he had been called but before he testified, the court summoned both counsel to the bench and conducted a hearing out of the presence of the jury. The purpose of the hearing was to inquire into the number of the defendant's prior convictions. Having determined that the correct number was seven, the court instructed the defendant as follows:

"You understand, Mr. Rutchik, that if you are asked the question in regard to have you ever been convicted of a crime, and you answer yes, and you're then asked how many and you answer what has been determined to be the correct number, that being seven, *at least in that instance* there will be no further questions asked of you concerning the nature of the crimes, etc.; that if you do not answer truthfully, then counsel has the right to delve more deeply into the nature of the crimes and when you were convicted. Do you understand that?" (Emphasis added.)

In his testimony on direct examination, the defendant admitted having been in the Foley's back yard on the evening of February 25th. He said that the reason he lied in his statement to police was because he was afraid of being "pinned" with the burglary because of his past and his reputation in the community. On the witness stand he denied having committed the burglary. He said he was in the area to visit his brother who lived nearby. He had been to his brother's house but no one was home. As he was walking back to his car, he heard people shouting. He stepped into the Foley's back yard to see what the disturbance was about and saw someone run through the yard. The defendant then ran down the alley and got into his car when Robert Foley ran up and questioned him.

In its cross-examination, the prosecution immediately inquired into the nature and circumstances of the defendant's prior convictions. Counsel for the defendant objected. A hearing was held in which the State requested permission to elicit prior convictions evidence under sec. 904.04(2), Stats. 1979–80. In particular, the prosecutor wished to examine the witness regarding the 1978 burglary mentioned in the complaint. After hearing arguments on both sides, the court agreed to allow the questions stating:

"Well, I think there's some validity to the state's position in regard to the one particular offense. The Court does have some reluctance in this regard because the Court does not feel that a person should be convicted of one offense solely on the basis of what he may have done in the past.

"This whole area was brought up, unfortunately, in the defendant's testimony in regard to how he was thought of in the community and all of the problems he's had because of his past. And the Court will permit counsel to go into the one crime in particular and to, if necessary, get into questions concerning whether or not he previously got himself involved in criminal activities to support a drug habit."

Section 904.04(2), Stats., which governs the use of evidence of prior misdeeds states:

"**Character evidence not admissible to prove conduct; exceptions; other crimes. . . .** (2) OTHER CRIMES, WRONGS OR ACTS. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

The general rule is one of exclusion; the jury is not permitted to convict someone based on the inference that

if he broke the law once he is likely to do so again. However, other crimes evidence is admissible when offered for some purpose other than to prove the general criminal disposition of the accused. If the evidence of the defendant's prior burglaries is to be allowed in this case, it must be shown that it is relevant to one or more of the named purposes. Additionally, the probative value of the other crimes evidence must not be substantially outweighed by the danger of undue prejudice. *Whitty v. State,* 34 Wis. 2d 278, 149 N.W.2d 557, *cert. denied,* 390 U.S. 959 (1967). The probative value of other crimes evidence "depends in part upon its nearness in time, place and circumstances to the alleged crime or element sought to be proved." *Whitty,* 34 Wis. 2d at 294.

We conclude that the evidence of the prior crime established a definite method of operation and was therefore admissible to show preparation, plan, identity and intent. The defendant opened the door to other crimes evidence when he placed his intent in issue with his testimony that his presence in Foley's back yard on the evening of February 25th was coincidental and innocent.[2] The state attempted to rebut that claim by introducing evidence that the defendant knew from having read the obituaries in the newspaper the Foleys would be away that evening, and that he had previously burglarized a house while the residents were at a funeral.

The defendant admitted that in 1978 he told a friend that he had read the obituary column and then gone to

---

[2] The state also argues that the door was opened to other crimes evidence when the defendant's brother, called as a witness for the prosecution, testified on cross-examination that the defendant had previously been convicted of burglaries. Because we hold that the evidence was rendered admissible within the terms of the trial court's ruling by the defendant's story of how he happened to be in the Foley's yard on the evening of the burglary, we do not reach the question of the effect of the defendant's brother's testimony.

the residence and committed a burglary. The state adduced evidence that the defendant did the same thing in this case. In its case in chief, the prosecution had called Jeffrey Yorton, an inmate with the defendant at the county jail. Yorton testified that the defendant told him he decided to go to the Foleys because he had been "paging through the obituaries and saw that this [the Foley's house] was near his brother's house, or something in that order, but it was out of the obituary column." Although the defendant denied that he read Marie Terrill's obituary,[3] he admitted having read the Kenosha News for February 25th in which that obituary was printed. Moreover, he admitted reading an article reporting a car theft that was printed on the page just opposite the obituary column.[4]

This court ruled on the admissibility of other crimes evidence under sec. 904.04(2), Stats., in *State v. Hall,* 103 Wis. 2d 125, 307 N.W.2d 289 (1981). In that case the defendant was tried in a single proceeding for twelve counts arising out of four separate incidents. The defendant alleged that the joinder of the crimes was prejudicial and they should have been severed under sec. 971.-12(3). The court stated that the resolution of the joinder question depended on whether the evidence of the various charges would be admissible as other crimes evidence. The court first noted the factual similarity among the four episodes: The defendant selected only all-night business establishments with only one person in attendance. The timing of the crimes established that the defendant planned the armed robberies to take place in the late night or early morning hours when few, if any, customers would be present. In three of the incidents, the

---

[3] Though Marie Terrill was residing in a nursing home at the time of her death, the address listed in the newspaper was that of the Foleys.

[4] The Kenosha News for February 25, 1981, was admitted into evidence as an exhibit.

defendant disguised his purpose by appearing to be on the premises to make a legitimate purchase and then waiting until other customers departed before committing the crimes. In two of the episodes, the defendant concealed his pistol in his waist band until the sales clerk began ringing up his purchases. The court concluded that the evidence was relevant, stating: "[T]he entire modus operandi of all the crimes is relevant to show that the Clark murder and armed robbery 'sprang from a like mental condition,' scheme or plan, thereby evincing an intent on Hall's part to commit murder and armed robbery. This evidence . . . was also probative as to the identity of the Clark station assailant." 103 Wis. 2d at 144. (Citations omitted.)

In this case the factual similarity between the crime charged and the previous incident was even closer. The evidence of the previous conviction is relevant to show the defendant's preparation or plan of selecting his burglary victims by means of funeral notices printed in the obituary column. It is also relevant in tending to identify the defendant as the perpetrator of the burglary. Finally, it is probative of the defendant's intent. The defendant admitted that he was in the Foley's yard on the evening the crime was committed. The State adduced evidence that the defendant knew from having read the newspaper obituary that Marie Terrill had died. The additional fact that the defendant had earlier burglarized a house while the occupants were at a funeral and that on that occasion he had learned the house would be empty from having read the obituaries is certainly relevant to show what he was there for.

The Supreme Court of Kansas admitted prior crimes evidence under facts similar to the present case in *State v. Wasinger*, 220 Kan. 599, 556 P.2d 189 (1976). In that case, the defendant was appealing from a conviction of attempted burglary. At trial, the State introduced the

testimony of two policemen who testified that they saw two men standing in front of a grocery store in the late evening. One of the men had the screen door of the grocery store open and was standing between the screen and the door. The other man, later identified as the defendant, was standing a few feet away with his back to the wall. As the police car approached, the defendant began walking away and as he walked made a gesture or motion with his left hand. A few seconds later, the man standing in the doorway closed the screen and also walked away.

Both men were stopped. Upon being asked what he was doing, the defendant answered that he was going to see his girl friend. During a weapons frisk of the other man, the police discovered a screwdriver. It was also determined that the lock and latch had been pried loose from the front door of the grocery store.

In *Wasinger*, the state also introduced evidence of a previous incident in which the defendant stood lookout while a partner pried a door open. In that case, the defendant took up a position where he could see approaching traffic and signaled his partner whenever anyone was coming.

The defendant objected to the admission of the prior incident as inadmissible other crimes evidence. The trial court admitted the evidence and the Kansas Supreme Court affirmed, stating:

"There are significant similarities between the two instances of criminal conduct. In both cases, in what appears to have been a preconceived plan, the defendant served as a lookout while his partner attempted to pry open the front door of a business building with a screwdriver. Evidence of the prior crime established a definite method of operation and, thus, showed preparation, plan, motive, and intent." 220 Kan. at 602–603, 556 P.2d at 192–193. (Citations omitted.)

The court further stated that the crucial question was intent. "The crucial issue, in the instant case, is the intent of defendant in his actions in front of the grocery store and in the apartment cove area where he was arrested. If defendant was there 'only to see his girlfriend' as he claimed, he committed no crime." 220 Kan. at 603, 556 P.2d at 193. Likewise, one of the crucial issues in this case is intent. If the defendant's presence in the Foley's backyard on the evening of the burglary was, as he claimed, purely coincidental and innocent, he was not guilty of burglary.

This court has recognized the propriety of using evidence of other criminal acts to prove intent. In *Barrera v. State,* 99 Wis. 2d 269, 298 N.W.2d 820 (1980) *cert denied,* 451 U.S. 972 (1981), the defendant was charged with having shot and killed a liquor store owner in the course of a robbery in Beaver Dam, Wisconsin. The defendant claimed that the shooting was accidental—that he was nervous and trembling and that the gun accidentally fired in a struggle with the store owner. To rebut that claim, the State offered and the court admitted evidence of a subsequent incident in which the defendant shot and killed a gas station attendant in Marston, Missouri. This court, noting the similarity of circumstances in the two incidents as well as their closeness in time, held the evidence admissible. The court stated:

"The record clearly demonstrates that the evidence objected to . . . was properly admissible under sec. 904.04(2), Stats., as it is probative of intent, the distinguishing element of the crime of first degree murder from other degrees of manslaughter. The Missouri slaying occurred only 12 hours after the shooting of Mrs. Bussie in Beaver Dam and the defendant used the same modus operandi, i.e., the same shotgun, the victims were females and alone and Barrera initially concealed the weapon under his coat." *Barrera,* 99 Wis. 2d at 280–281.

The Fifth Circuit Court of Appeals reached the same conclusion in a case similar to this one in *United States v. Brunson*, 549 F.2d 348 (5th Cir. 1977).[5] In that case the defendant was charged with robbing a post office and killing the postmistress. The defendant admitted having been at the scene when the crime was committed but claimed that he was there innocently. He said he had gone to the post office with another man named Herman but had not known that Herman was going to rob the place or commit murder.

The government attempted to rebut that claim by offering evidence that Herman and the defendant had committed an armed robbery of a grocery market four days earlier. The court admitted the evidence for the purpose of showing that when the defendant entered the post office he intended to help Herman rob it. The court said:

"Finally, as the case developed, the only genuine issue was whether Brunson harbored the requisite intent to help Herman rob the Gotha post office. In his statement to investigators, which was placed in evidence before the other crime evidence, Brunson admitted that he was with Herman in the post office when the crimes took place and denied only that he, Brunson, had any idea Herman was going to commit a robbery. Brunson reiterated the story throughout his later testimony at trial. The government clearly had a substantial need for evidence that Brunson had helped Herman rob the Magik Market four days earlier, for there was precious little other evidence to contradict Brunson's claim of an innocent, unknowing state of mind." *Brunson*, 549 F.2d at 361.

[5] The *Brunson* case was decided under Fed R Evid 404(b) which states:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

The defendant's previous burglary conviction is likewise relevant and admissible under our statute to show, among other things, his intentions on the evening of February 25th.

The evidence of the prior burglary also meets the second requirement for admissibility as other crimes evidence. Although the trial judge did not explicitly state that he was weighing the probative value of the evidence against its prejudicial effect, his comments at the time the evidence was admitted reflect a balancing of those two considerations. Those comments clearly show that the judge recognized and considered the prejudice that attends other crimes evidence. The judge expressed his "reluctance" to admit the evidence "because the court does not feel that a person should be convicted of one offense solely on the basis of what he may have done in the past." The decision to admit the evidence under these circumstances implies a conclusion that its probative value outweighs any possible prejudice.

We conclude from an examination of the record that in view of the defendant's testimony "explaining" why he was in Foley's back yard, his prior conviction for burglary under similar circumstances was probative and that its probative value outweighed its prejudicial effect.[6] We recognize that the two incidents occurred several years apart[7] and that our cases have held that

---

[6] On the question of whether a trial court's failure to make an explicit determination that the probative value of the evidence is not outweighed by its possible prejudicial effect requires reversal, this Court said: "[T]his court will uphold a discretionary decision of the trial court if the record contains facts which would support the trial court's decision had it fully exercised its discretion." *Haskins v. State*, 97 Wis. 2d 408, 425, 294 N.W.2d 25 (1980) (quoting *Hammen v. State*, 87 Wis. 2d 791, 800, 275 N.W.2d 709 (1979)).

[7] The earlier burglary was committed on August 25, 1978.

temporal proximity is an important factor in assessing the probity of prior criminal acts. *Whittey v. State,* 34 Wis. 2d at 294. However, in *Vanlue v. State,* 96 Wis. 2d 81, 291 N.W.2d 467 (1980), we held that a prior offense committed a year and a half earlier was not so remote as not to be probative of the defendant's intent. Moreover, we have held that in assessing the impact of the passage of time on the relevancy of prior crimes evidence, periods of confinement will not be included in computing the time between incidents. *Sanford v. State,* 76 Wis. 2d 72, 82, 250 N.W.2d 348 (1977) ; *State v. Hungerford,* 84 Wis. 2d 236, 260, 267 N.W.2d 258 (1978).

The defendant, Rutchik, was confined in the Wisconsin State Reformatory at Green Bay from the time of his 1978 conviction until September of 1980 when he was released on parole. He was still on parole at the time of the Foley burglary. Under the circumstances, the earlier incident was not so remote as to lose its probity in the Foley burglary.

The court of appeals did not reach the question of whether the trial court's decision to admit the evidence was correct on the merits. It reversed the conviction on the grounds that the trial court had impaired the defendant's ability to make an informed decision on whether to take the stand by first telling him he would not be questioned about the nature of his prior convictions and then allowing the prosecutor to do so. This, the court said, denied the defendant effective assistance of counsel and a fair trial.

The source of the court of appeals' error lies in its failure to separate the two purposes for which evidence of prior convictions is admissible. Evidence of other crimes, wrongs or acts is admissible for the substantive purpose of proving motive, opportunity, intent, etc. as

specified in sec. 904.04(2), Stats. It is also admissible for impeachment purposes under sec. 906.09.[8] When such evidence is admitted for impeachment, the scope of the inquiry is very limited. The examiner may ask the witness if he has ever been convicted of a crime and if so how many times. No further inquiry into the nature and circumstances of the crimes is permitted.[9]

The trial court made two separate rulings on other crimes evidence. The first ruling, made at the hearing on the motion *in limine,* addressed the admissibility of the evidence to prove the merits under sec. 904.04(2), Stats. The court said the prosecution could not use the evidence in its case in chief but that it might be permitted if the defendant raised matters in his defense rendering other crimes evidence admissible. The second ruling, made immediately after the defendant was called,

[8] "906.09 **Impeachment by evidence of conviction of crime.** (1) GENERAL RULE. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime is admissible. The party cross-examining him is not concluded by his answer.

"(2) EXCLUSION. Evidence of a conviction of a crime may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.

"(3) ADMISSIBILITY OF CONVICTION. No question inquiring with respect to conviction of a crime, nor introduction of evidence with respect thereto shall be permitted until the judge determines pursuant to s. 902.04 whether the evidence should be excluded.

"(4) JUVENILE ADJUDICATIONS. Evidence of juvenile adjudications is not admissible under this rule.

"(5) PENDENCY OF APPEAL. The pendency of an appeal therefrom does not render evidence of a conviction inadmissible. Evidence of the pendency of an appeal is admissible."

[9] In commenting on *Rice v. State,* 195 Wis. 181, 217 N.W. 697 (1928), Wigmore characterized the Wisconsin rule that a cross-examiner may not ask the defendant for the name of the crime as "a queer rule." 3A Wigmore, *Evidence* § 987, p. 910 (Chadbourn rev. 1970).

had to do with the use of the evidence for impeachment.

It is clear, therefore, that the court did not permit the use of other crimes evidence contrary to its own rulings. At the time the court issued its second ruling, the assurances given to the defendant were accurate. The use of other crimes evidence for nonimpeachement purposes was still controlled by the judge's ruling on the motion *in limine.* To that point, at the beginning of the examination of the defendant, nothing had been brought out to open the door under sec. 904.04(2), Stats. It was only after the defendant raised the issue of intent with his story of how he happened to be at the scene on the evening of the burglary that the evidence became relevant and admissible.[10]

Finally, the defendant contends that the court erred in first admitting and then sending to the jury a transcript of a statement made by the state's witness Jeffrey Yorton. Yorton testified that Rutchik had confessed to the burglary while they were both in the Kenosha County Jail. During its examination of Yorton, the state introduced a transcript of a conversation between Yorton and police detective Loewen in which Yorton recounted what the defendant told him about the burglary. Defense counsel did not object to the court's receiving the document as an exhibit, but did object to permitting the witness to read the statement into the record before the jury. The prosecutor sought permission to have the statement read, arguing that the evidence was admissible as a prior consistent statement under sec. 908.01(4)(a)2,

---

[10] The defendant's assertion that he was relying on the judge's second ruling on other crimes evidence in deciding to take the stand is simply not credible. An examination of the record shows that defense counsel called the defendant as his next witness *before* the trial judge called counsel to the bench and made his ruling. Defendant asks us to believe he relied on an assurance before it was made.

Stats.[1] The court denied the request on the grounds that there was no charge of "recent fabrication or improper influence or motive" as required by the statute. Hence, the transcript was received as an exhibit but not read to the jury.

That is how the matter stood until both sides had concluded their closing arguments to the jury. At that point, the prosecutor requested that the court allow the jury to see the transcript. The state argued this was necessary to rebut the suggestion made by defense counsel during closing argument that Detective Loewen had suggested or "fed" answers to Yorton in his wording of the questions. The court conceded there was merit to the state's argument but sent the jury out without the statement.

Shortly after retiring, the jury requested to see the transcript. The court summoned both counsel and stated:

"I've asked both counsel to be present because the first thing the jury asked for after they apparently had gone over what was given to them in the jury room, was for the statement made by Yorton to Officer Loewen.

"I've heard the arguments of counsel previously, and, as I indicated, the final argument which was not on the record, but which I heard, left the impression with me, and apparently with the jury, that there's something about that statement that ought to be looked at in regard to how Mr. Yorton gained the information that he gained, whether it was because the officer fed him loaded questions or whether he really knew. And while I know

[1] "908.01 Definitions. The following definitions apply under this chapter: . . . (4) STATEMENTS WHICH ARE NOT HEARSAY. A statement is not hearsay if:

"(a) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is: . . .

"2. Consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive."

the arguments of the defendant concerning other things about that statement, whether or not it was the first time anybody had ever talked to Mr. Yorton, I think because of the final argument, and the impression that was left with the jurors concerning this statement, I now have to send it in to them so that they can get the true picture of that statement. And the Court will permit State's Exhibit 3 to go in to the jury."

The defendant attacks the court's action on two grounds. First, he argues that the proffered evidence is inadmissible since it does not qualify under the prior consistent statement exception to the hearsay rule. We find it unnecessary to rule on the defendant's argument since the evidence is not hearsay and is therefore admissible if it is relevant. The statutes define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Section 908.01 (3), Stats. The transcript was not offered to prove the truthfulness of Yorton's assertions. It was offered to rebut the suggestion that those assertions, whether true or false, were "fed" or suggested to Yorton by the questioner. Since the evidence was not hearsay and was clearly relevant in assessing the value (though not the substance) of Yorton's testimony, it is admissible.

The defendant next argues that it was error to send the transcript to the jury room.

The court of appeals held that the trial court's action had the effect of "unduly and prejudicially emphasizing Yorton's statement over the actual testimony at the trial." It based its decision on *Payne v. State,* 119 Wis. 615, 227 N.W. 258 (1929) wherein this court said the trial court erred when it sent to the jury statements the defendant made to the police and the district attorney

after his arrest. This court held such use inequitable in that it allowed one side to make its case with written evidence while the other side was required to rely on the jury's recollection of oral testimony.

We do not abandon that general principle but determine that other considerations are relevant in this case. In his closing argument, the defense counsel apparently attempted to explain Yorton's knowledge of the details of the burglary by suggesting that Detective Loewen fed him those details in his questions. The trial court was convinced that the jury had asked to see the transcript for the specific purpose of testing defense counsel's suggestion. We see no unfairness in allowing the jury to test the plausibility of that explanation. Though a better practice in such a situation would be to read rather than give the transcript to the jury, we conclude that the court's action did not so prejudice the jury that the verdict must be overturned.

*By the Court.*—The decision of the court of appeals is reversed and the judgment of the trial court is affirmed.

STEINMETZ, J. (concurring). I agree with the majority; however, I write to state my disagreement not only with the proposed result of the dissenting opinion, but also with its reasoning.

The *modus operandi* of the charged burglary and of the prior crime of burglary was not "one that is commonplace." (Dissenting op. at 92.) I disagree with the state's position referred to in the dissenting opinion that one previous crime such as this one should not be used as a modus operandi exception to other crimes evidence. I know of no studies nor statistics that deal with the nature of burglaries to lead to a conclusion that the modus operandi of these burglaries was commonplace.

The dissent attempts to minimize the unique character of this burglary by stating that there are law enforce-

ment publications which caution the public to take special precautions in order to avoid burglaries during funerals. Advice on how to lessen the possibilities of being a victim of crime does not bear on the frequency of a particular method of crime commission. Such advice helps only to point out areas where potential victims of crime can do something to lessen their vulnerability.

The *modus operandi* involved is the invasion of houses when chances are great the occupants will be attending scheduled and publicized wakes and burials. Even if this *modus operandi* occurs with some degree of frequency, it is a particularly stylized method of burglary and is probative of a method of committing burglary. There is no mathematical formula for equating modus operandi. To study death notices in planning and committing burglaries is evidence not only of antisocial behavior but also a disregard for the rights and privacy of victims. This behavior is a planned invasion of the homes of persons who have suffered a personal loss of a loved one and therefore becomes an identifiable act which cannot be classified as just another burglary. The ghoulish behavior of a thief entering a person's home, which is vacant due to the occupants' attendance at a burial, shows a less than human attitude. I do not believe the lack of decent human conduct evidenced by reading obituary notices for planning an uninterrupted burglary is commonplace. It is akin to the moral deficiency of the grave robbers of history. To commit a burglary once in this manner deserves society's condemnation. To do it twice, as this defendant did, has value in considering as his *modus operandi*. I find that the identical facts of these two burglaries establish a modus operandi exception for the evidence, not just evidence that the defendant is a person of bad character.

I agree also with the majority that the unique but similarly identifiable characteristics of the two crimes

allow use of other crimes evidence to prove identity and intent based on the defendant's explanation of his presence at the scene of the charged burglary.

I am authorized to state that JUSTICES WILLIAM G. CALLOW and ROLAND B. DAY join in this concurring opinion.

HEFFERNAN, C. J. (concurring with dissenting opinion). I agree wholeheartedly with the dissent of Justice Abrahamson except for her interpretation of *McClelland*. *McClelland* was determined not on the basis of prior crimes evidence and whether or not probativeness was outweighed by prejudice, but was instead decided completely on what we referred to in *McClelland* as "the generalized rule" that the introduction of collateral matters by extrinsic proof was impermissible. We concluded that the proof made by the extrinsic evidence in *McClelland* constituted plain error. Although the question was posed in respect to the weighing of probativeness as compared to prejudice, and there was some discussion of the judge's role in that respect, the decision in *McClelland* was not based on that evidentiary problem. Accordingly, I disagree only with the interpretation of *McClelland*. In all other respects, I join the dissent.

SHIRLEY S. ABRAHAMSON, J. (dissenting). This case is another in the ever-increasing number of cases interpreting the rule excluding other crimes evidence, the most litigated rule of evidence. See 2 Weinstein and Berger, *Weinstein's Evidence* par. 404[08], p. 404–47 (1981); Wright and Graham, *Federal Practice and Procedure: Evidence* sec. 5239, p. 427 (1978).

I would affirm the decision of the court of appeals, although I use a different rationale. I dissent from the majority's reversal of the decision of the court of ap-

peals, because I do not believe the facts satisfy the tests we have set forth for the admissibility of other crimes evidence under sec. 904.04(2), Stats. 1981–82, which provides as follows:

"(2) OTHER CRIMES, WRONGS, OR ACTS. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

The general policy of sec. 904.04(2), as the majority says, is one of exclusion of other crimes evidence. *Whitty v. State,* 34 Wis. 2d 278, 297, 149 N.W.2d 557 (1967). The inference that someone who broke the law once will break it again is not a legally permissible inference. Furthermore, it is thought that other crimes evidence will distract the jury and subtly encourage it to make the inference of propensity to commit crimes. For this reason sec. 904.04(2) excludes other crimes evidence except under limited circumstances in which the evidence is relevant without resort to the impermissible inference. *Paulson v. State,* 118 Wis. 89, 98–103, 94 N.W. 771 (1903); 2 Weinstein and Berger, *Weinstein's Evidence* p. 404–7, Advisory Committee's Note Rule 404 (1981).

In *State v. Pharr,* 115 Wis. 2d 334, 340 N.W.2d 498 (1983), decided just last month, we again said that under sec. 904.04(2) the trial court *"must* apply a two-prong test in determining whether other crimes evidence is admissible. . . . The first prong *requires* the trial court to determine whether the evidence fits within one of the exceptions set forth in sec. 904.04(2). The second prong *requires* the trial court to determine whether the probative value of the evidence is substantially outweighed by

the danger of unfair prejudice to the defendant." (Citations omitted.) (Emphasis added.) [1]

[1] Our cases can be read as interpreting the two-prong analysis required under sec. 904.04(2) in two inconsistent ways.

In one line of cases the court appears to be saying that the second prong is automatically triggered upon a sec. 904.04(2) objection to evidence. This line of cases can be read as saying that where the defendant objects to the admission of other crimes evidence and the other crimes evidence is admissible under one of the exceptions, the judge must, before admitting the evidence, weigh the probative value against the undue prejudice, whether or not the defendant expressly requested the court to do the weighing. Thus the defendant's single objection under sec. 904.04(2) includes a request for the weighing. If the defendant does not object under sec. 904.04(2), he or she has no right to have this error reviewed on appeal. This analysis is based on *Whitty v. State,* 34 Wis. 2d 278, 295, 149 N.W.2d 557 (1967), *cert. denied* 390 U.S. 959, one of the court's landmark cases on this issue, and *Kwosek v. State,* 60 Wis. 2d 276, 282, 208 N.W.2d 308 (1977), interpreting *Whitty* and sec. 904.04(2). See also *State v. Spraggin,* 77 Wis. 2d 89, 95, 252 N.W.2d 94 (1977); *Hammen v. State,* 87 Wis. 2d 791, 798–799, 275 N.W.2d 709 (1979), relying on *Whitty* and *Kwosek.* In *Pharr,* the defendant objected to the other crimes evidence on grounds of prejudice. The *Pharr* court set forth the two-prong test citing *Spraggin* and *Hammen.*

In this case the defendant did not move at the trial court that the evidence be excluded because the probative value was outweighed by the prejudicial effect. The majority squeezes the record hard and finds that the trial court did make such a weighing and reviews the weighing.

In a second line of cases the court appears to be saying that if the defendant does not object to admissibility of other crimes evidence on the grounds that the probative value is outweighed by undue prejudice (sec. 904.03), the trial court need not make the weighing. See *McClelland v. State,* 84 Wis. 2d 145, 158, 267 N.W.2d 843 (1978), and *Barrera v. State,* 99 Wis. 2d 269, 281, 298 N.W.2d 820 (1980).

*McClelland* and *Barrera* can be read as not establishing a rule that in order to trigger the second prong of the analysis the defendant must object to other crimes evidence on grounds of both secs. 904.04(2) and 904.03. In both cases the defendant made no motion in the trial court to exclude the evidence on the basis of

We also noted in *Pharr* that implicit within our two-prong analysis is the requirement that other crimes evidence be relevant to an issue in the case. *State v. Alsteen,* 108 Wis. 2d 723, 729, 324 N.W.2d 426 (1982); sec. 904.01, Stats. 1981–82.

Under the first prong of the test, the state, as the offeror of the evidence, has the burden of proving that the evidence of other crimes falls within an exception and that it is relevant to a material issue in the case.

The defendant testified that he was near the burglarized home because he was visiting his brother who lived close by. The state offered the following other crimes

sec. 904.04(2). In both cases this court nevertheless reviewed the evidence and held that the other crimes evidence fell within an exception. Nevertheless the court refused to weigh probativeness and prejudice, saying that since trial counsel had not objected on the grounds of undue prejudice neither the trial court nor this court had an obligation to exclude the evidence on grounds of undue prejudice.

I conclude that construing *McClelland* and *Barrera* to require an objection under sec. 904.03 once a 904.04(2) objection is made would be erroneous. Such a construction is contrary to sec. 904.04. As the Judicial Council Committee's Note to sec. 904.04 explains, the "evidence of other crimes . . . which tend to prove motive, identity . . . is not automatically admissible. It should be excluded if . . . under all the circumstances the danger of undue prejudice substantially outweighs the probative value under s. 904.03." 59 Wis. 2d R79. See also the Federal Advisory Committee's Note at 59 Wis. 2d R80 and an analysis of the legislative history of Federal Rule 404 showing the drafters' intent that the trial court must be satisfied that the probative value of the evidence outweighs the danger of prejudice by applying the balancing test of sec. 904.03 before the trial court admits the evidence. *See* Judicial Council Committee's Note to sec. 904.04(2), 59 Wis. 2d R79; Federal Advisory Committee's Note, 59 Wis. 2d R80; Wright and Graham, *Federal Practice and Procedure: Evidence* sec. 5240, p. 471 (1972); 2 Weinstein and Berger, *Weinstein's Evidence* par. 404[18], p. 404–99 (1982); and Note, *Rule 404(b), Other Crimes Evidence: The Need for a Two Step Analysis,* 71 Nw. U.L. Rev. 635 (1977).

evidence: the defendant had previously burglarized a home which he knew from reading the obituaries would probably be unoccupied.

The question of admissibility of other crimes evidence requires an analysis of the inferential processes the jury is expected to use. A broad, sweeping, nonanalytical approach by counsel or the trial court is likely to lead to an incorrect ruling and does not assist an appellate court in reviewing the trial court's ruling. As Judge Weinstein has written, "The more reason there is in the decision to admit or exclude [evidence of other crimes], the more apt it is to be fair. Both bench and bar benefit at a trial if critical questions of admissibility are exposed and reasons clearly stated." 2 Weinstein and Berger, *Weinstein's Evidence* par. 404[08], pp. 404–46 (1982).

In this case the state asserted at trial that the evidence fell within seven exceptions, namely, motive, intent to steal, method of operation, opportunity, prior planning, knowledge, and identity. The state said no more other than referring to what it called the defendant's underlying drug problem. Mere recital of exceptions with no explanation of the relation of the evidence offered to both the exception claimed and a material issue in the case is of no aid to the trial court in rendering a ruling.

The trial court admitted the evidence without identifying the exception under which it was admitting the evidence or the material issue in the case to which the evidence was relevant.

The majority opinion states in a conclusory fashion that the evidence "established a definite method of operation and was therefore admissible to show preparation, plan, identity and intent." *Supra,* p. 67. The majority opinion does not explain what it means by "definite method of operation" or "preparation, plan, identity or intent." The majority opinion offers no an-

alysis for affirming the admission of the evidence. As one commentator said:

"Particularly to be deplored is what might be called the 'smorgasbord' approach to analysis of other crimes evidence in which the court simply serves up a long list of permissible uses without any attempt to show how any of them are applicable to the case at hand. . . . What is to be avoided is the mere listing of possible uses in the hope that at least on will seem to the reader to be applicable to the facts of the instant case." Wright and Graham, *Federal Practice and Procedure: Evidence* sec. 5240, p. 479 (1978).

Because the exceptions listed in the statute are not mutually exclusive, it may be difficult to determine which exception most properly applies. Nevertheless it is important to analyze the inferential processes the fact finder is expected to use so that the exception is identified and the rule, namely, the exclusion of evidence which is relevant only for showing a general disposition to commit a crime, is not violated. See *State v. Tarrell*, 74 Wis. 2d 647, 662, 247 N.W.2d 696 (1976) (Abrahamson, J., dissenting opinion); *State v. Spraggin*, 77 Wis. 2d 89, 100, 252 N.W.2d 94 (1977); Comment to Wis. J.I.— Criminal No. 275. These exceptions have been explained in the cases and short, simple explanations have been set forth by the Wisconsin Criminal Jury Instructions Committee. See Wis. J.I.—Criminal No. 275.

The majority holds that the other crime evidence is admissible under the plan exception. The word "plan" as used in sec. 904.04(2) has been defined by this court. In *State v. Pharr*, 115 Wis. 2d 334, 346, 340 N.W.2d 498 (1983), this court adopted the following definition of plan for purposes of sec. 904.04(2):

"The word 'plan' in sec. 904.04(2) means a design or scheme formed to accomplish some particular purpose. . . . Evidence showing a plan establishes a definite prior

design, plan, or scheme which includes the doing of the act charged. As Wigmore states, there must be 'such a concurrence of common features that the various acts are materially to be explained as caused by a general plan of which they are the individual manifestations.' " Quoting *State v. Spraggin,* 77 Wis. 2d 89, 99, 252 N.W.2d 94 (1977). See also *State v. Alsteen,* 108 Wis. 2d 723, 732, 324 N.W.2d 426 (1982) (Abrahamson, J., concurring opinion.)

To be admissible to show plan, the 1978 burglary sought to be shown here would have to have been part of a scheme leading to the commission of a 1981 burglary. Obviously the 1978 and 1981 burglaries do not bear this relationship. On this review the state does not even claim the evidence falls within this exception. And for good reason. It clearly does not.

The majority also holds that the other crime evidence is admissible because it proves "identity." The state on review does not assert the applicability of this exception. The state took the position at oral argument that a single prior crime in which the defendant employed a *modus operandi* frequently used in burglaries, that is, burglarizing the home of a deceased at the time of the funeral, is not probative to identify the defendant as the one who committed the offense in issue here. I agree.

Other crimes showing a *modus operandi* are admissible to prove identity if the crimes show a method of committing the crime so unique that there is little likelihood that two persons used the same method by coincidence. The other crimes and the crime charged are so similar that they bear the "signature" of the defendant. *Whitty v. State,* 34 Wis. 2d 278, 295, 149 N.W.2d 557 (1967); McCormick, *Evidence* sec. 190, p. 449 (Cleary ed. 1972); Wis. J.I.—Criminal No. 275. This is not such a case. Indeed publications by law enforcement agencies advise

the public to take special precautions to protect against burglaries during funerals.[2]

The majority finally concludes that the other crime evidence is admissible to prove intent. Intent refers to the state of mind required for the offense. Wis. J.I.—Criminal No. 75. In burglary, the intent required is intentionally entering a place with intent to steal or to commit a felony. Sec. 943.10(1), Stats. 1981–82.

Since most crimes have some mental element, the intent exception is frequently invoked to justify the admission of other crimes evidence. But for other crimes evidence to be admissible to prove intent, intent must be a material issue in the case. *State v. Alsteen,* 108 Wis. 2d 723, 729, 324 N.W.2d 426 (1982). Since the defendant in this case denies being the perpetrator, he implicitly

---

[2] The Montgomery County, Maryland, Department of Police brochure entitled *Burglary Prevention: Your Best Home Insurance* (1978) advises:

"PLAY IT SAFE—DON'T ADVERTISE YOUR HOME AS A GOOD PLACE TO BURGLARIZE. 4. DON'T TELL A BURGLAR WHEN AND WHERE TO STRIKE. Classified advertising, social event announcements, and obituaries often tell a burglar when and where to strike. Avoid the use of addresses in classified advertising, announce social events after the fact, and leave a house-sitter when attending funerals." (p. 3)

A brochure for public distribution published in 1981 by the U.S. Department of Justice, Law Enforcement Assistance Administration, entitled *Take a Bite Out of Crime,* cautions: "Burglars read newspapers, too. Don't include your address in a classified ad. Announce social events and vacations after they happen—not before. *If there's a death in the family, arrange for a housekeeper on the day of the funeral."* (p. 17) (emphasis added)

Studies show that burglary tends to be a planned crime and that burglary occurs when the burglar believes there is greater likelihood that the burglar will not be confronted by an occupant. Conklin and Bittner, *Burglary in a Suburb,* 11 Criminology 206 (1973); Scarr, *Patterns of Burglary,* 12 (National Institute of Law Enforcement and Criminal Justice, U.S. Department of Justice, 1972).

concedes that the perpetrator had the requisite intent. Intent is not an issue in this case, and the other crime evidence is not admissible under this exception. See *Whitty v. State,* 34 Wis. 2d 278, 293, 149 N.W.2d 557 (1967), *cert. denied* 390 U.S. 959; Wright and Graham, *Federal Practice and Procedure: Evidence* sec. 5242, p. 489 (1978) ; 2 Weinstein and Berger, *Weinstein's Evidence* par. 404[09], pp. 404–52, 404–53 (1982).

The state argued on this review that the other crime evidence is admissible to prove absence of mistake or accident. The state correctly views the mistake-accident exception as a special form of the intent exception. McCormick, *Evidence* sec. 190, p. 450 (Cleary ed. 1972). Wigmore gives the following example of the mistake-accident exception: The accused admits shooting the victim, but denies an intent to kill; the defense is that the shooting was accidental. Proof of three other shootings at the victim by the accused has significant probative value on the issue of mistake or intent under the doctrine of chance without requiring an inference to character. The chances of an inadvertent shooting by a defendant at the same victim on several successive similar occasions are extremely small. The similarities between the two crimes must be substantial to create significant probative value under the doctrine of chance. 2 Wigmore, *Evidence* sec. 302, p. 241 (Chadbourn rev. 1979).

Ordinarily the mistake exception, like the intent exception, is invoked only when the absence of mistake is a material issue in the case, such as when an accused admits that he did the acts charged but denies the intent necessary to constitute a crime or contends that he did the acts accidentally. Because intent and absence of mistake are not material issues in this case, I conclude that the other crime evidence is not admissible under these exceptions.

The state implicitly contends that this other crime evidence was admissible despite its failure to qualify within the claimed statutory exceptions because it is relevant on the issue of defendant's truthfulness in explaining his presence near the burglarized home and does not raise the forbidden inference of propensity. *Cf. McClelland v. State,* 84 Wis. 2d 145, 155–157, 267 N.W.2d 843 (1978). In other words, the state says the evidence is relevant because it makes the existence of the fact that he was present for innocent purposes less probable than it would be without the evidence, sec. 904.01, Stats. 1981–82. The state is also asserting that the evidence is relevant for this purpose without resort to the impermissible inference. The state has, of course, already impeached the defendant's credibility by introducing evidence of his prior convictions, seven felony convictions, to be precise. The state apparently does not feel this impeachment of credibility is sufficient. The state wishes to introduce evidence of the nature of a prior burglary on the ground that the jury can infer from the other crime evidence that the real reason the defendant was at the scene of the crime (to use the state's terminology, his "intent" in being present) was to commit a crime similar to the one he committed before.

The evidence of the other crime is being offered, according to the state, not to show the defendant's propensity to commit a burglary but on the theory of chance. The state's brief (p. 23) argues that "chance could not account for the defendant's presence at the scene, for the odds against a person being innocently at the scene of a burglary of the address of one whose obituary has recently been published, after he had previously committed a burglary of the residence of a person for whom an obituary had appeared are overwhelming." The state is arguing that the other crime evidence is relevant because it

lessens the likelihood that the defendant was present on an innocent mission.

As I explained in the shooting example discussed previously, the doctrine of chance requires significant similarity of occurrences, significant similarity of other crime and the crime charged. In this case the two offenses must be similar in a way that will show that the chance of the defendant's presence for an innocent purpose in this case is unlikely. 2 Wigmore, *Evidence* sec. 302 (Chadbourn rev. 1979) ; Roth, *Understanding Admissibility of Prior Acts: A Diagrammatic Approach,* 9 Pepperdine L. Rev. 297, 302 (1982).

I find the state's theory of chance unpersuasive under the facts of this case. The fallacy of the state's position can be seen by comparing the application of the doctrine of chance in this case to prove "absence of mistake or accident" with the application of the doctrine to prove "absence of mistake or accident" in the shooting case described above. In this case we have a single prior incident, not multiple incidents. In this case the prior crime and the charged crime involved different victims. In this case, unlike the shooting case, we have the possibility of a third person being the perpetrator of the charged offense. This latter possibility, present here owing to the existence of "identity" as the ultimate issue in this case, severely attenuates the doctrine of chance argument. The two burglaries, like the multiple shootings, did involve the same modus operandi, but the *modus operandi* of the prior burglary and the charged crime is one that is commonplace. In this case the prior and alleged crimes are not so distinctive as to be viewed as nearly the same.

I conclude that evidence that an individual burglarized a home on one occasion using the obituary technique does not by itself, without resort to the impermissible inference that the defendant had a propensity or disposition

to commit the crime, make the fact to be proved, namely, that the defendant was present near a home with the intent to burglarize, any more or less probable than it would be without the evidence. All I can say from the other crime evidence in this case is that the defendant is in a class of persons in which the incidence of burglary is greater than among the general public. Other crimes evidence cannot be utilized where resort must be had to the inference that a person of a certain character is more likely to have committed the act in question than persons generally. 2 Weinstein and Berger, *Weinstein's Evidence* par. 404[01], pp. 404–12, par. 404[17] (1982) ; Wright and Graham, *Federal Practice and Procedure: Evidence* sec. 5248 (1978).

The state's doctrine of chance is but a veil for an attempt to prove identity by showing intent to burglarize as the reason the defendant was present near the burglarized house. The inference of both intent and identity is too tenuous in light of the lack of distinctive characteristics of the two crimes. The other burglary evidence in this case is relevant only if the fact finder resorts to the impermissible inference that the individual has a disposition to commit such crimes. Accordingly, I conclude from the proffered other crime evidence was inadmissible.

Even if I were to conclude that the other crime evidence was admissible I would conclude, under the second prong of the analysis applicable to sec. 904.04(2), that the trial court abused its discretion. The trial court did not weigh the probative worth of the other crime evidence against the factors set forth in sec. 904.03. The fault was not entirely that of the trial court. The trial court was not assisted by counsel. But failure to exercise discretion is abuse of discretion.

If I were nevertheless to review this record under the second prong of the analysis, I would conclude the proba-

tive value, if any, of the other crime evidence was very limited and was substantially outweighed by the danger of unfair prejudice. The danger of unfair prejudice is that the other crimes evidence induces inferential error. For example, in this case the jury may have reacted emotionally to the other crime evidence and found the defendant guilty not because it determined he was guilty as charged but because it determined he was a bad person. Or the other crime evidence may have so dominated the minds of the jurors that the jurors exaggerated its probativeness, gave the other crime evidence undue weight, and paid less heed to other probative evidence, *Whitty v. State*, 34 Wis. 2d 278, 292, 149 N.W.2d 557 (1967), *cert. denied* 390 U.S. 959. I conclude that the admission of the other crime evidence constituted unfair prejudice because it hindered accurate fact finding by allowing an appeal to inappropriate logic and by preventing a rational determination of the truth. For a discussion of unfair prejudice, a phrase rarely defined by the courts, see Gold, *Federal Rule of Evidence 403: Observations on the Nature of Unfairly Prejudicial Evidence,* 58 Wash. L. Rev. 497 (1983) ; Dolan, *Rule 403: The Prejudice Rule in Evidence,* 49 So. Cal. L. Rev. 220 (1976).

I also agree with the court of appeals that the trial court erred in allowing the statement to go into the jury room. At most, the judge should have read the transcript to the jury. See *Franklin v. State,* 74 Wis. 2d 717, 725, 247 N.W.2d 721 (1976) ; *Payne v. State,* 199 Wis. 615, 629–30, 227 N.W. 258 (1929).

Since the credibility of the defendant was the prime issue in the case, I conclude that the other crime evidence constituted prejudicial error and requires a reversal. *State v. Spraggin,* 77 Wis. 2d 89, 103, 252 N.W.2d 94 (1977) ; *Hart v. State,* 75 Wis. 2d 371, 394–395, 249 N.W. 2d 810 (1977). "It may well be that the defendant is guilty of the offense charged against him, but he is

entitled to a fair trial according to the established rules of procedure and principles of law." *Boldt v. State,* 72 Wis. 7, 17, 38 N.W. 177 (1888).

For the reasons set forth, I would affirm the decision of the court of appeals. I am authorized to state that JUSTICE WILLIAM A. BABLITCH joins in this dissent.