**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**October 27, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.  *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.**    **2021AP405-CR**

**STATE OF WISCONSIN**

Cir. Ct. No.  2018CF1

**IN COURT OF APPEALS**
**DISTRICT IV**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

MARTY S. MADEIROS,

   DEFENDANT-APPELLANT.


        APPEAL from a judgment and an order of the circuit court for Dodge County:  MARTIN J. DE VRIES, Judge.  *Reversed and cause remanded for further proceedings*.

        Before Fitzpatrick, Graham, and Nashold, JJ.

        ¶1        GRAHAM, J.  Marty Madeiros appeals a judgment of conviction for operating a motor vehicle while intoxicated, fifth offense, and an order denying his postconviction motion.  Madeiros argues that he is entitled to a new trial

because, among other things, the circuit court erroneously admitted evidence at trial related to Madeiros's prior conviction for hit and run. We conclude that the evidence of the prior hit and run was other-acts evidence governed by WIS. STAT. § 904.04(2)(a) (2019-20).[1] We further conclude that the evidence was relevant only to prove propensity, which is a prohibited purpose under § 904.04(2)(a), and that the evidence was not probative of any permissible non-propensity purpose. The State does not expressly develop any argument that any error in admitting this propensity evidence was harmless and, based on our review of the entire record, we are not persuaded the State could meet its burden to prove harmless error. Accordingly, we reverse the judgment and order, and we remand for a new trial.

## BACKGROUND

¶2 This appeal arises from a police investigation and arrest that occurred in the early morning hours of December 30, 2017. We briefly summarize the pertinent facts here, and we provide additional details as needed in our discussion below.

¶3 On December 30, shortly after 1:00 a.m., Madeiros's vehicle was found abandoned on a rural highway with a flat tire and its headlights on. Approximately one hour later, officers located Madeiros, who was intoxicated and walking along a public trail. The temperature was seven degrees below zero that night, and Madeiros had walked more than three miles after abandoning his vehicle by the side of the highway.

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version.

¶4 Officers drove Madeiros to a police garage bay, where they questioned him about the events of that night. During the conversation that followed, which lasted just over 20 minutes and was recorded on an officer's body camera, Madeiros attempted to persuade the officers that he had not committed any drunk-driving-related offense that night. Among other things, he told the officers that he left his vehicle because it "just stopped operating," and he insisted that he had not started drinking until after he left his vehicle.

¶5 At one point during the conversation, one of the officers made a brief reference to Madeiros's four prior convictions for OWI. At other points, the officers also discussed a separate case, Dodge County Case No. 2017CT280, in which Madeiros had been convicted of hit and run based on an incident that occurred six months earlier in June 2017. Specifically, the officers mentioned that, as a result of the hit and run conviction, Madeiros had been placed on probation with "absolute sobriety" as a condition, and his driver's license had been revoked. When questioning Madeiros about his conduct on the night in question in December 2017, one of the officers told Madeiros that he was the officer who had investigated the June 2017 hit and run. The officer asserted that Madeiros had done "the same thing" that night in June 2017—Madeiros "hit a car," parked his vehicle, and "took off running on foot." In response to this assertion by the officer, Madeiros suggested that this incident was different because he did not "hit anything tonight."

¶6 The State charged Madeiros with one count of operating a motor vehicle while intoxicated (OWI), one count of operating a motor vehicle with a prohibited alcohol concentration (PAC), and one count of obstructing an officer in violation of WIS. STAT. § 946.41(1). The obstruction charge was based on the

3

State's allegation that Madeiros provided false information to the officers during their video-recorded conversation in the garage bay.

¶7      Madeiros filed a motion to exclude other-acts evidence at trial.[2] During the hearing that followed, it was clarified that the other-acts evidence in question related to Madeiros's prior convictions for OWI and the June 2017 hit and run. Madeiros sought to exclude from trial any evidence of the nature of his prior convictions, including the portions of the body camera footage in which the officers and Madeiros discussed those offenses.

¶8      The prosecutor agreed that any mention of Madeiros's prior convictions for OWI was unfairly prejudicial, and the circuit court determined that the portion of the video that mentioned those convictions was inadmissible. The court and parties agreed that, when the prosecutor presented the video footage at trial, he would mute the portion that mentions Madeiros's four prior OWIs.

¶9      However, the prosecutor opposed the motion to the extent it sought to exclude evidence about the June 2017 hit and run, and he represented that he intended to introduce evidence about the nature of that case and its legal consequences for Madeiros. Specifically, the prosecutor sought to admit: the fact that Madeiros had been charged with and convicted of hit and run; that he was placed on probation; that his driver's license had been revoked; and that he was prohibited from consuming alcohol as a result of that conviction. The prosecutor argued that these facts should be admitted because they would "really … put[]

_____

[2] As discussed at greater length below, "other-acts evidence" refers to evidence of "other crimes, wrongs, or acts" that are separated in time, place, or manner from the events alleged in the criminal complaint, and the admissibility of such evidence is governed by WIS. STAT. § 904.04(2)(a) and *State v. Sullivan*, 216 Wis. 2d 768, 576 N.W.2d 30 (1998).

things into perspective" for the jury and because they were relevant to Madeiros's intent to mislead the officers about what had occurred on the night in question.

¶10    After viewing the video, the circuit court agreed with the prosecutor, concluding that the discussion of the June 2017 hit and run was "part of the whole context of what Mr. Madeiros is talking about here[,]" and further, that "it does relate to his intent to lie to the police." In making this decision, the circuit court did not cite *State v. Sullivan*, 216 Wis. 2d 768, 576 N.W.2d 30 (1998), the seminal Wisconsin case addressing other-acts evidence. Nor did the court expressly determine whether the probative value, if any, of the June 2017 hit and run or its legal consequences to Madeiros outweighed the prejudicial effect of that evidence.

¶11    Following the circuit court's determination that evidence of the June 2017 hit and run would be admissible at trial, the attorneys agreed to craft a stipulation providing background facts about that conviction, so as to avoid testimony about it during the trial. At that time, the circuit court acknowledged, and the prosecutor agreed,  that Madeiros had preserved "all his appeal rights" regarding the admission of the other-acts evidence, and that Madeiros's counsel would have a "continuing objection" so that he would not have to repeatedly object to evidence about the June 2017 hit and run during trial.

¶12    Consistent with this discussion, the parties agreed on a stipulation of facts about the June 2017 hit and run, and we summarize its pertinent provisions as follows. One night in June 2017, Madeiros was driving his car and struck another vehicle. Madeiros did not stop at the scene, and he instead abandoned his damaged vehicle on the side of the road one mile from the crash. Madeiros left his damaged vehicle on foot and did not report the crash to the police that night. Madeiros called the police the following day, indicating that he had left his vehicle

and walked three hours to his residence. Based on this incident, Madeiros was convicted of hit and run and placed on probation. Madeiros was on probation for the June 2017 hit and run on December 30, 2017, the night he was arrested for the current charges. His conditions of probation included a prohibition against violating any law as well as a prohibition against consuming or possessing alcohol. Additionally, his operating privilege was revoked, with a limited exception for permitted uses of his occupational operator's license during certain daytime hours. Restrictions on the occupational license included that he "maintain absolute sobriety and not drive with an alcohol concentration greater than .02."

¶13 At the beginning of the trial, the circuit court read these stipulated facts and others to the jury before the State presented its witnesses. Various officers and witnesses testified for the State, and Madeiros testified in his own defense.

¶14 The State's case was based on circumstantial evidence that Madeiros had consumed alcohol to the point of intoxication before driving his vehicle and abandoning it on the side of the road on December 30, 2017. The State introduced the testimony of an emergency dispatcher, who received three calls about Madeiros's abandoned vehicle between 1:02 and 1:18 a.m. The third call came from Emily Laufer, a retired police officer who testified at trial. Laufer testified that she came across Madeiros's vehicle, which was pulled to the side of the road with its back end partially obstructing the lane of traffic. She testified that she followed a "fresh" set of footprints to a public trail known as Wild Goose Trail, and that, based on the patterns of the footprints in the snow, she believed that the person leaving them was having a medical condition or was intoxicated. One of the arresting officers testified that he looked in the window of the locked vehicle and noticed two or three empty brown bottles in the backseat. The prosecutor

introduced pictures from an officer's dashboard camera, which showed Madeiros's footprints zigzagging up the trail, and testimony that the officers caught up with Madeiros at 2:07 a.m. on Shady Lane, several miles from where he had abandoned his vehicle. It is undisputed that, by that time, Madeiros was intoxicated, and a blood sample taken several hours later showed that he had a blood alcohol concentration of .164.

¶15 Madeiros's defense rested in large part on the State's inability to provide direct proof that he consumed alcohol before driving that night, and on the jury crediting Madeiros's testimony that he had not consumed alcohol until after he left his vehicle on the side of the road. Madeiros testified as follows. He had been ice fishing on the evening in question. He started to have car trouble as he was driving to another fishing spot and, after the engine stopped working, he pulled his vehicle to the shoulder. He did not have his cell phone with him that evening and was unable to flag down any passing vehicles. He left his vehicle to walk down Wild Goose Trail toward a gas station in the nearest town to call for help. Before leaving the vehicle, he put on his ice fishing gear, poured four beers into an empty juice bottle, and took that bottle and a couple bottles of schnapps with him on the trail. According to Madeiros, he did not have any alcohol prior to abandoning his vehicle, but he consumed beer and schnapps to the point of intoxication as he walked along the trail. He testified that the reason the police did not find any bottles of alcohol on him at the time of his arrest was because he disposed of some of the bottles in the woods, and he threw the remaining bottle into the field when he saw police headlights approaching him from behind.

¶16 The jury found Madeiros guilty of the OWI and PAC charges[3] and not guilty of obstruction. Madeiros then filed a postconviction motion, arguing that he was entitled to a new trial based on certain errors that occurred during the pretrial proceedings and trial. Pertinent to our discussion below, Madeiros argued that the court erroneously admitted evidence about his June 2017 hit and run conviction at trial.[4]

¶17 Following a remand from this court, the circuit court held a hearing and denied Madeiros's motion.[5] Madeiros appeals.

---

[3] The PAC charge was later dismissed by operation of law.

[4] Madeiros also argued that the court should have declared a mistrial after the prosecutor inadvertently failed to mute the portion of video footage in which the officer mentions Madeiros's four prior convictions for OWI, and that counsel was ineffective for failing to challenge, pursuant to WIS. STAT. § 907.01, the retired police officer's testimony that she thought Madeiros was intoxicated based on her observations of the placement of his vehicle on the roadway and his footprints walking away from his vehicle. We do not discuss these arguments further because our conclusion about the admission of evidence of the June 2017 hit and run is dispositive. *See Barrows v. American Fam. Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

[5] Although not directly pertinent to any issue we decide in this appeal, we note that the circuit court originally denied the postconviction motion without holding an evidentiary hearing or explaining its reasons for concluding that a hearing was not required. Following the original submission of this appeal to this court, we remanded for the circuit court to make findings to address apparent gaps in the trial record. In response to our order, the circuit court held an evidentiary hearing, supplemented the record with a transcript of proceedings that had not been included in the record as originally presented on appeal, and made certain findings of fact. We ordered replacement briefing in light of the information learned during the remand, and the framing of some of the parties' arguments has changed to account for the new evidence and findings. We integrate the new evidence and arguments into this opinion without specifically commenting on how the evidence and arguments have evolved in light of the proceedings that followed our remand order.

**DISCUSSION**

¶18 As discussed above, Madeiros argues that the circuit court erroneously exercised its discretion when it admitted evidence of his June 2017 hit and run. He contends that the evidence is other-acts evidence governed by WIS. STAT. § 904.04(2)(a), and that the circuit court failed to conduct the proper analysis set forth in *Sullivan*, 216 Wis. 2d 768, to determine whether it was admissible for any permissible purpose under § 904.04(2)(a). Madeiros contends that, under *Sullivan*, the circuit court's discretionary decision to admit the evidence cannot be sustained on appeal.

¶19 Our analysis proceeds in four parts. We first provide pertinent legal background about WIS. STAT. § 904.04(2)(a), which governs the admissibility of other-acts evidence. Second, we discuss the evidence of Madeiros's June 2017 hit and run that was admitted at trial, and the circuit court's pretrial ruling to admit that evidence. Third, we consider and reject the State's argument that we should sustain the circuit court's exercise of discretion, either because the evidence of the June 2017 hit and run is not other-acts evidence governed by § 904.04(2)(a), or because it was admissible under that statute for a non-propensity purpose. Finally, we consider whether Madeiros is entitled to a new trial as a result of the erroneous admission of the evidence, and we conclude that a new trial is required because the State has not shown that the error was harmless.

**I. Other-Acts Evidence**

¶20 WISCONSIN STAT. § 904.04(2)(a) governs the admissibility of "evidence of [a defendant's] other crimes, wrongs, or acts." That category of evidence, commonly referred to as "other-acts evidence," consists of evidence about "occurrences that are separated in time, place, or manner from the event

alleged in" a criminal complaint. DANIEL D. BLINKA, WISCONSIN PRACTICE SERIES; WISCONSIN EVIDENCE § 404.602 at 204 (4th ed. 2017). With one exception that is inapplicable here, § 904.04(2)(a) provides that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith."

¶21 In the context of a criminal trial, the purpose of the other-acts rule of evidence is to prevent a jury from convicting a defendant based on a so-called propensity inference. *See Sullivan*, 216 Wis. 2d at 783. A propensity inference is an inference that a person acted "'in conformity with a particular character trait'" on a specific occasion. *State v. Tabor*, 191 Wis. 2d 482, 490, 529 N.W.2d 915 (Ct. App. 1995) (quoted source omitted). Accordingly, the prosecution cannot introduce evidence of a "deviant character trait of the defendant" and ask the jury to infer that the defendant acted consistently with that character trait on the charged occasion. *Id.* at 491-92; *see also State v. Marinez*, 2011 WI 12, ¶25, 331 Wis. 2d 568, 797 N.W.2d 399 (providing that WIS. STAT. § 904.04 prohibits evidence of character "'as circumstantial evidence of conduct'" (quoted source omitted)). Nor can the prosecution use evidence of a prior act by the defendant to show that the defendant has a deviant character trait that makes it more likely that the defendant acted in a similar way on the occasion in question. *State v. Rutchick*, 116 Wis. 2d 61, 67-68, 341 N.W.2d 639 (1984) ("the jury is not permitted to convict someone based on the inference that if he broke the law once he is likely to do so again").

¶22 One reason for the prohibition on propensity inferences is the "overstrong tendency [of a jury] to believe the defendant guilty of the charge [in the criminal complaint] merely because [the defendant] is a person likely to do such acts." *Whitty v. State*, 34 Wis. 2d 278, 292, 149 N.W.2d 557 (1967).

Another reason is the concern that a jury will convict the defendant not because the jury believes that the defendant is guilty of the charged offense, but rather, because it believes that the defendant has escaped punishment for other offenses. *Id.* "[A]n invitation to focus on an accused's *character*" rather than on the accused's *conduct on the charged occasion* "magnifies the risk that jurors will punish the accused for being a bad person regardless of his or her guilt of the crime charged." *Sullivan*, 216 Wis. 2d at 783 (emphasis added).

¶23 Despite the prohibition on propensity inferences, other-acts evidence can be admissible under some circumstances. The statute governing other-acts evidence does not require its exclusion when the evidence is offered for a purpose other than propensity, such as to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." WIS. STAT. § 904.04(2)(a); *see also* *Marinez*, 331 Wis. 2d 568, ¶¶18, 33 (explaining that § 904.04(2)(a)'s list of permissible purposes is illustrative but not exhaustive). However, to be admissible, the other-acts evidence must actually be relevant to and probative of a non-propensity purpose. *State v. Hurley*, 2015 WI 35, ¶77, 361 Wis. 2d 529, 861 N.W.2d 174 ("'The key is relevance: What is [the evidence] being offered to prove, and does it have any tendency to make that proposition more or less likely?'" (quoted source omitted)).

¶24 When deciding whether to admit evidence of a defendant's other acts under WIS. STAT. § 904.04(2)(a), Wisconsin courts are to apply the three-step analytical framework set forth in *Sullivan*, 216 Wis. 2d at 771-73. Under *Sullivan*, a court must first consider whether the evidence is offered for a proper purpose under § 904.04(2)(a)—that is, whether the proponent has identified some purpose other than propensity for admitting the evidence. *Id.* Second, the court must then consider whether the evidence is actually relevant to and probative of

that non-propensity purpose. *Id.* Third, the court must consider whether the probative value of the evidence to the non-propensity purpose is "substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury." *Id.*

¶25 Under the *Sullivan* framework, the proponent of the other-acts evidence "bears the burden of establishing that the first two prongs are met by a preponderance of the evidence." *Marinez*, 331 Wis. 2d 568, ¶19. Once the first two prongs of the test are satisfied, the burden shifts to the opposing party "to show that the probative value of the [other-acts] evidence is substantially outweighed by the risk or danger of unfair prejudice." *Id.*

## II. The Circuit Court's Admissibility Determination

¶26 We review a circuit court's decision to admit other-acts evidence for an erroneous exercise of discretion. *See Sullivan*, 216 Wis. 2d at 780. Accordingly, on appeal, we assess "whether the circuit court 'reviewed the relevant facts; applied a proper standard of law; and using a rational process, reached a reasonable conclusion.'" *State v. Payano*, 2009 WI 86, ¶41, 320 Wis. 2d 348, 768 N.W.2d 832 (quoted source omitted). "Although the proper exercise of discretion contemplates that the circuit court explain its reasoning, when the court does not do so, we may search the record to determine if it supports the court's discretionary decision." *Randall v. Randall*, 2000 WI App 98, ¶7, 235 Wis. 2d 1, 612 N.W.2d 737.

¶27 At this point, we pause to observe that the evidence of the June 2017 hit and run had an obvious tendency to encourage the jury to make inferences about Madeiros's character and propensity, and the admission of the evidence created a risk that the jury would convict him based upon those inferences. From

this evidence, the jury learned that: Madeiros had previously fled the scene of a traffic accident, presumably to avoid legal consequences; he had a criminal record and had been placed on probation as a result of this prior incident; and he violated the terms of his probation by drinking alcohol on the night of December 30, 2017—whether he drank it before he left his vehicle (as the State argued) or after he left his vehicle (as Madeiros insisted). Based on those facts, the jury was invited to draw inferences about Madeiros's character and propensity—that he has a problem with drinking, an overall disregard for the law, and a propensity to flee to avoid the consequences of his crimes. From all this, the jury could readily infer that, because Madeiros broke the law once in June 2017, it is likely that he did so again in December 2017. These are precisely the types of inferences that are prohibited by WIS. STAT. § 904.04(2) because they might persuade the jury to convict Madeiros of an OWI-related offense based on evidence about his general criminal disposition and propensity to commit OWI-related offenses, whether or not the jury was persuaded beyond a reasonable doubt by the State's evidence that Madeiros committed an OWI-related offense on the evening in question.[6]

¶28 In ruling that evidence regarding the June 2017 hit and run was admissible, the circuit court did not appear to consider the obvious risk that the jury would convict Madeiros based on a propensity inference. The circuit court did not cite *Sullivan*, nor did it expressly consider *Sullivan*'s three-step framework. The court stated that the evidence was relevant to "context" and "intent," but it did not provide any on-the-record explanation of how the evidence

---

[6] Indeed, as discussed in the section below pertaining to harmless error, the way the prosecutor actually used the evidence of the June 2017 hit and run during the trial was to ask the jury to draw an inference about Madeiros's character and propensity.

13

was probative of those non-propensity purposes. Nor did it weigh the probative value of the evidence against its prejudicial effect.

### III. The State's Arguments For Admissibility

¶29 We now consider the State's arguments that the circuit court properly admitted evidence of Madeiros's June 2017 hit and run. In defending the circuit court's exercise of discretion, the State argues that the evidence is not other-acts evidence at all and, therefore, its admissibility is not governed by WIS. STAT. § 904.04(2)(a) and *Sullivan*. In the alternative, the State argues that the circuit court properly found that the evidence was admissible to prove context, modus operandi, and intent. We address the State's alternative arguments in turn.

### A.

¶30 We begin with the State's argument that the June 2017 hit and run should not be considered other-acts evidence at all. To support this argument, the State relies on the fact that the officers discussed the hit and run with Madeiros during a conversation in which Madeiros allegedly obstructed the officers' investigation by lying about his reasons for leaving his vehicle. The State explains that it had to prove (among other things) that Madeiros knowingly provided the officers with false information, and that he intended for the allegedly false information to make it more difficult for the officers to investigate his actions on December 30, 2017. *See* WIS. STAT. § 946.41(2)(a) (defining obstruction as "knowingly giving false information to [an] officer … with intent to mislead the officer in the performance of his or her duty"); *see also* WIS JI—CRIMINAL 1766. According to the State, "information about [Madeiros's June 2017] hit and run … was a substantive part of his lie to the police, … part of the crime of obstruction and not an 'other act' at all."

14

¶31　The State is wrong, both on the law and on the facts.

¶32　As for the law, the State does not point to a single case providing that a suspect's mention of a prior crime in the course of providing false information to officers removes that prior crime from the realm of other acts governed by WIS. STAT. § 904.04(2)(a) and *Sullivan*. Generally speaking, we need not consider arguments that are unsupported by legal authority. *See **State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

¶33　Further, even if we were to accept the State's premise that, under the right circumstances, a suspect's discussion of a prior crime could be a substantive part of an obstruction charge, we cannot reach that conclusion here. We first observe that the State made no showing—nor does it even suggest—that Madeiros made an affirmative misrepresentation about the prior crime that was calculated to obstruct the investigation into what occurred on the charged occasion. *See* WIS. STAT. § 946.41(2)(a). The officers discussed the June 2017 hit and run when they confronted Madeiros about his actions on December 30, 2017, and Madeiros truthfully acknowledged that he had been convicted for the hit and run, that he was on probation, that his license was revoked, and that he was subject to a probation condition of absolute sobriety as a result of his hit and run conviction.

¶34　In its arguments to the circuit court and its briefing on appeal, the State focuses on a single sentence during the video-recorded conversation, in which Madeiros distinguished his actions in June 2017 from his actions on the night in question in December 2017. As mentioned above, this exchange was initiated by one of the officers, who compared Madeiros's conduct in June 2017 to

his conduct on the night in question. In response, during a clip lasting no longer than six seconds, Madeiros asserted that he had not "hit anything tonight."[7]

¶35 The State's focus on this brief statement by Madeiros is unavailing because the State does not (and cannot) argue that any information in this statement was inaccurate in any way. If anything, Madeiros appeared to truthfully acknowledge that he hit another vehicle in June 2017, and the State has never claimed that Madeiros hit anything in December 2017.

¶36 Instead, the only facts that Madeiros allegedly misrepresented to the officers were facts about what happened on the night in question in December 2017. Specifically, the State argued that Madeiros attempted to mislead the officers about when he abandoned his vehicle, his reasons for doing so, what kind of alcohol he drank that night, and whether he drank that alcohol before he drove or after he left his vehicle. In allegedly misrepresenting these facts to the officers, Madeiros did not once mention the June 2017 hit and run.

¶37 Finally, the State contends that omitting all of the references to the hit and run from the video footage would have left the jury with "isolated snippets of the conversation that likely would have appeared disconnected and made little sense." Again, we disagree. The officers discussed the facts of the hit and run, the

---

[7] Throughout its appellate briefing, the State contends that Madeiros "repeatedly tried to sell his story" that he did not drive drunk on the night in question "by referring to his prior hit and run conviction" and "trying to claim he had no reason to flee this time." These assertions are not consistent with the footage from the officer's body camera, and we caution the State to be more careful in its representations about the record. The footage from the body camera shows that the June 2017 hit and run offense and its legal consequences were discussed on isolated occasions during the conversation in the garage bay, and each time, the discussion was initiated by one of the officers. Madeiros attempted to distinguish his conduct on the night in question from the prior offense on just one isolated occasion, in which he told the officers that he "didn't hit anything tonight."

revocation of Madeiros's license, and his probation status during seven discrete clips at 3:10-55, 5:01-07, 5:20-25, 9:35-43, 10:14-45, 11:05-30, and 12:00-52. All of these clips could have been easily excised from the footage without omitting any of Madeiros's alleged misrepresentations about his conduct on the night in question.

¶38 For all of these reasons, we reject the State's argument that the June 2017 hit and run was "a substantive part of [Madeiros's] lie to the police." The State has not shown that Madeiros misrepresented facts about the June 2017 hit and run, nor that he falsely distinguished the facts of the hit and run from the night in question, nor has the State shown that it needed to introduce Madeiros's accurate statements regarding the June 2017 hit and run as part of its proof that Madeiros misrepresented the reasons he left his vehicle on the night in question. Accordingly, we conclude that evidence of the hit and run was other-acts evidence governed by WIS. STAT. § 904.04(2)(a) and *Sullivan*.

## B.

¶39 In the alternative, the State argues that information about the June 2017 hit and run was admissible under WIS. STAT. § 904.04(2)(a) and *Sullivan* for a non-propensity purpose. To the extent that the record supported a determination that evidence about the hit and run was admissible to prove some non-propensity purpose, we could sustain the circuit court's exercise of discretion based upon our independent review, despite the circuit court's failure to explain its reasons for admitting the evidence. *See Randall*, 235 Wis. 2d 1, ¶7; *see also State v. Hunt*, 2003 WI 81, ¶4, 263 Wis. 2d 1, 666 N.W.2d 771 (providing that we are required to independently review the record "if the circuit court fails to provide a detailed *Sullivan* analysis"). Accordingly, we now consider whether the record

17

supports a determination that, under *Sullivan*, evidence of the hit and run was admissible for one of the purposes identified by the State.

¶40     As discussed above, the first step of the *Sullivan* analysis requires an acceptable non-propensity purpose for which the other-acts evidence should be admitted. *Payano*, 320 Wis. 2d 348, ¶63.  Our supreme court has commented that "this 'first step is hardly demanding.'"  *Id.* (quoted source and emphasis omitted). The potential admissible purposes are "'almost infinite,'" and the party seeking admission "'need only identify a relevant proposition that does not depend upon the forbidden inference of character as circumstantial evidence of conduct.'" *Marinez*, 331 Wis. 2d 568, ¶25 (quoted source omitted).

¶41     Here, the State argues that evidence about the June 2017 hit and run was admissible under WIS. STAT. § 904.04(2)(a) and *Sullivan* to prove context, modus operandi, and intent.[8]  We acknowledge that intent and modus operandi can be permissible purposes of other-acts evidence under § 904.04(2)(b), and we assume without deciding that, under the correct circumstance, context could be a permissible purpose as well.  Accordingly, we conclude that the circuit court could have properly determined that the State met its burden on the first step of the *Sullivan* analysis.

¶42     The second step of the *Sullivan* analysis contemplates a determination of whether the information is relevant to any of the non-propensity

---

[8] Modus operandi is a Latin term meaning "method of operating."  *Modus operandi*, BLACK'S LAW DICTIONARY (10th ed. 2014).  The State did not clearly articulate modus operandi as a permissible purpose during the pretrial hearing, but we assume without deciding that the State has not forfeited its argument about modus operandi and that we could sustain the circuit court's exercise of discretion if the evidence were admissible for that purpose.

18

purposes identified by the State. To be relevant, the evidence "must relate to some fact that is of consequence to the determination of the action, and it must have some tendency to make that fact more or less probable than it would be without the evidence." *State v. Davidson*, 2000 WI 91, ¶64, 236 Wis. 2d 537, 613 N.W.2d 606. "However, if the other acts evidence is probative of nothing more than the defendant's propensity to act a certain way, the evidence is not admissible." *State v. Barreau*, 2002 WI App 198, ¶40, 257 Wis. 2d 203, 651 N.W.2d 12.

¶43 Here, the circuit court did not specifically articulate how evidence related to the hit and run was relevant to any non-propensity purpose identified by the State. And, for the reasons described below, we conclude that the State did not make a sufficient showing that the evidence was actually probative of the non-propensity purposes it has identified.

¶44 The argument most clearly articulated by the State during the pretrial hearing was that the hit and run was helpful "context" for the jury's consideration. During that hearing, the State argued that the fact that Madeiros had been involved in a prior hit and run "really … puts things into perspective":

> You know, you know, so he's actually, [Madeiros] is bringing up the fact he's trying to distinguish the crash six months ago from what happened tonight. So he's like, hey, tonight's different, I didn't hit … anybody. We'll have to watch the video to see his exact words. And I think that's a very important thing for the jury to learn that, you know, he's acknowledging that six months earlier there was this incident. He's convicted. He's been convicted of hit and run. He was on probation for the hit and run when this happened. His license had been taken away for hit and run, you know, because … this happened. So it really gives the jury the, puts things into perspective.

¶45 However, the State did not explain why, precisely, any "perspective" was needed about Madeiros's prior hit and run conviction. As discussed above,

the State does not contend that Madeiros misrepresented any fact about the June 2017 hit and run that would be relevant to the obstruction charge. And the State does not identify any probative value that "perspective" about his prior hit and run would have to the OWI and PAC charges, apart from proving that Madeiros had broken the law once and was likely to have done so again. *See Rutchick*, 116 Wis. 2d at 67-68; *see also Barreau*, 257 Wis. 2d 203, ¶40 ("if the other acts evidence is probative of nothing more than the defendant's propensity to act a certain way, the evidence is not admissible"). Accordingly, we conclude that the circuit court could not have properly determined that the evidence was admissible to provide "context" or "perspective."

¶46 So too regarding the State's argument about modus operandi. The State argues that Madeiros's prior hit and run conviction was relevant to show that he "had a particular modus operandi of how he behaves when he has committed a traffic crime: he flees the scene, abandons the car, and then tries to make up implausible excuses for it when police finally reach him." Yet, this assertion is nothing more than an argument that Madeiros's prior conduct is relevant to show that he acted in conformity with his prior conduct on the night in question—that is, that the evidence can be used as propensity evidence.

¶47 We acknowledge that, under some circumstances, courts have determined that evidence of a distinctive method of operating can be properly admitted as other-acts evidence under WIS. STAT. § 904.04(2)(a).[9] However,

---

[9] *See, e.g.*, **State v. Rutchick**, 116 Wis. 2d 61, 68, 341 N.W.2d 639 (1984) (providing that evidence of a prior crime that "establish[es] a definite method of operation" may be "admissible to show preparation, plan, identity and intent"); *see also Whitty v. State*, 34 Wis. 2d 278, 293, 149 N.W.2d 557 (1967); **State v. Hammer**, 2000 WI 92, ¶24, 236 Wis. 2d 686, 613 N.W.2d 629.

20

evidence of modus operandi is not necessarily admissible for its own sake, unless it is probative of some non-propensity fact such as intent that is of consequence at trial.[10]  We therefore turn to the State's arguments about intent.

¶48    Intent is not an element of the OWI and PAC charges, and the State does not argue that the evidence was admissible to show that Madeiros had the intent to drive while intoxicated or with a prohibited alcohol concentration on the night in question.  Instead, the State's arguments about intent are focused on the obstruction charge.  As mentioned above, the State argues that certain evidence from the June 2017 hit and run conviction, and the conviction itself, was relevant to the obstruction count to show that Madeiros had the intent to mislead the officers about his conduct on December 30, 2017.  However, the State has not clearly articulated how the evidence of the prior hit and run was probative of Madeiros's intent.

¶49    During the pretrial hearing, the State's argument about intent was entirely conclusory:

> [The hit and run] also, judge, supports the element of intent, you know.  I have [a] charge Count 3, obstructing an officer, by giving false information.…  I think it's clear he's lying.  Clearly the officers are doing their job.  And element number four, he intended to mislead.  And I'm

---

[10] DANIEL D. BLINKA, WISCONSIN PRACTICE SERIES; WISCONSIN EVIDENCE § 404.717 at 247-49 & nn.2-4 (4th ed. 2017) (citing cases that discuss modus operandi evidence, and explaining that, although "[s]ome criminals exhibit a distinctive method of operation in carrying out various crimes[,]" "[p]roof of a distinctive 'modus operandi' does not … lead to automatic admissibility.  Rather, the method of operation must be probative of issues such as intent, plan, or identity.").  Here, Madeiros's alleged modus operandi was not admissible to prove identity because identity was not at issue in this case—there was no dispute that it was Madeiros (and not someone else) who abandoned his car on the side of the road, and that it was Madeiros (and not someone else) who drank alcoholic beverages that night.  Nor was there any assertion that Madeiros planned the crimes he was charged with in this case.

> allowed to bring in evidence of other acts that show intent. And I think that when you, if you watch the [first] 12 minutes [of the body camera footage] … you'll come to the conclusion of, yeah, he is intentionally lying to the police.

This argument about intent fails for the same reasons explained above—the State does not assert that Madeiros misrepresented any fact about the June 2017 hit and run or its legal consequences and, therefore, the State had no reason to present evidence about the hit and run as part of its proof that Madeiros "knowingly [gave] false information to [an] officer … with [the] intent to mislead the officer in the performance of his or her duty." *See* WIS. STAT. § 946.41(2)(a).

¶50    The State attempts to elaborate on its argument about intent in its appellate briefing, but the argument fares no better. On appeal, the State contends that "the hit and run was extremely similar to the crimes with which Madeiros was charged in this case" because, among other things, it occurred only six months prior to the current charges and was near in place. But the State does not explain how these similarities have any tendency to make it more probable that Madeiros intended to mislead the officers on the night in question, except by way of an impermissible propensity inference.[11]

---

[11] Although the State does not explicitly make this argument, its submissions could be read to imply that Madeiros's probation status was probative of his intent to mislead the police. Specifically, this argument (which, again, the State does not explicitly make) would be that, because Madeiros was on probation with absolute sobriety as a condition of his probation, he would have had more reason than the average individual to attempt to avoid the consequences of getting caught driving while intoxicated. However, Madeiros addressed this potential argument in his opening appellate brief, in which he cited *State v. Kourtidias*, 206 Wis. 2d 574, 557 N.W.2d 858 (Ct. App. 1996), for the proposition that Madeiros's probation status was not admissible for this purpose. The State does not address Madeiros's argument about *Kourtidias* in its response brief, thereby conceding that Madeiros's probation status was not properly admitted to prove his motivation to deceive the officers about whether he had been drinking on the night in question. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted arguments are deemed conceded).

¶51     For all these reasons, we conclude that evidence of the June 2017 hit and run is not probative of any non-propensity purpose, and the circuit court could not have properly determined that it was relevant under the second step of the *Sullivan* analysis.   Because the evidence is probative of "nothing more than [Madeiros's] propensity to act a certain way, the evidence is not admissible." *Barreau*, 257 Wis. 2d 203, ¶40.

¶52     Having concluded that evidence of the hit and run was not probative of any non-propensity purpose, we need not dwell on whether, under *Sullivan*'s third step, the risk of unfair prejudice significantly outweighed its value for a non-propensity purpose.   We pause only briefly to observe that there is a great risk of unfair prejudice under these circumstances.   *See* BLINKA, *supra*, § 404.604 at 214 ("The more attenuated its relevancy, the lower its probative value and the greater the likelihood that the jury will misuse the other act.").   In this context, "the legal prejudice of which we speak … is the potential harm in a jury's concluding that because an actor committed one bad act, he necessarily committed the crime with which he is now charged." *State v. Fishnick*, 127 Wis. 2d 247, 261-62, 378 N.W.2d 272 (1985).   As we have explained, the evidence was not relevant for a permissible purpose and was relevant only to prove propensity.   Lacking any permissible use for the hit and run evidence, which played a prominent role in the State's case, it is likely that, to the extent the jury considered the evidence, the jury would use it to prejudge Madeiros's guilt on the crime charged based on his "general criminal disposition" and the inference that, because he broke the law

once in June 2017, he is likely to have done so again on the night of December 30, 2017.[12] *See **Rutchick***, 116 Wis. 2d at 67-68.

## IV. Harmless Error

¶53 Although we have determined that the circuit court erroneously admitted evidence of the June 2017 hit and run, that does not necessarily mean that a new trial is required. "Error in admitting other acts evidence is subject to harmless error analysis." **State v. Thoms**, 228 Wis. 2d 868, 873, 599 N.W.2d 84 (Ct. App. 1999). The burden of proving that an error is harmless is on the beneficiary of the error—here, the State. **State v. Mulhern**, 2022 WI 42, ¶43, 402 Wis. 2d 64, 975 N.W.2d 209; *see also* **State v. Alexander**, 214 Wis. 2d 628, 652, 571 N.W.2d 662 (1997).

¶54 As an initial matter, we observe that the State does not develop any argument that the circuit court's admission of evidence about the June 2017 hit

___

[12] Although the parties do not discuss the jury instructions in their briefing on this topic, we acknowledge that the circuit court instructed the jury as follows: "During the videos played at trial you may have heard comments about prior convictions of the defendant. You may not consider these comments as proof that the defendant is guilty in this case." Although we presume that juries follow the instructions that are given to them, we are not persuaded that the circuit court's instruction could have effectively mitigated the risk that the jury would draw a propensity inference from the evidence about the hit and run. Among other things, the quoted instruction, which referred to "comments about prior convictions" during the video, was crafted as a curative instruction to address the comment in the video about Madeiros's prior OWI convictions that the prosecutor inadvertently failed to mute. The hit and run conviction and its legal consequences were referred to not just in the video, but also in a stipulation, and as part of the prosecutor's opening statement and closing argument. The court instructed the jury that it had to accept the stipulated facts as true, and it never instructed the jury about any permissible non-propensity purpose for which the stipulated facts could be considered. Under the circumstances, it is unlikely that the jury would have understood the above-quoted instruction to mean that the jury was forbidden to draw character and propensity inferences from the evidence about the hit and run.

and run was harmless.[13] We could take the State's failure to advance any such argument as a concession that, if it was error to admit the evidence, the error was not harmless. *See* ***Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.***, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (addressing deemed concessions). Yet, even without resting our conclusion on the State's failure to develop an argument, we are not persuaded that the State could meet its burden to prove that the error was harmless beyond a reasonable doubt.

¶55 In assessing whether an error is harmless, the question is whether we can confidently say, based on the entire record, that the error was harmless beyond a reasonable doubt. ***State v. Nelson***, 2014 WI 70, ¶28, 355 Wis. 2d 722, 849 N.W.2d 317. In so doing, we may consider a variety of factors, including

> the frequency of the error, the importance of the erroneously admitted evidence, the presence or absence of evidence corroborating or contradicting the erroneously admitted evidence, whether the erroneously admitted evidence duplicates untainted evidence, the nature of the defense, the nature of the State's case, and the overall strength of the State's case.

***State v. Mayo***, 2007 WI 78, ¶48, 301 Wis. 2d 642, 734 N.W.2d 115.

¶56 As discussed, the jury's verdicts on the OWI and PAC charges would turn on whether the jury believed that Madeiros drank alcohol before he drove his vehicle on the night in question, as the State argued, or whether the jury

---

[13] This omission is notable, as the State is undoubtedly aware of the law regarding harmless error. Indeed, in a separate section of its appellate brief, the State argues that any error the circuit court made in addressing the inadvertently played video evidence which mentioned Madeiros's prior OWI convictions was harmless, in part because the mention of the prior convictions was "brief, it did not occur during witness testimony, and [according to the State] it was unclear whether any of the jurors even noticed it." The same argument could not be made about the June 2017 hit and run, which was prominently discussed multiple times during the trial.

believed Madeiros's testimony that he did not start drinking until after he left his vehicle. Generally speaking, we conclude that the State's case was strong, if circumstantial. The admissible evidence suggested that Madeiros had abandoned his vehicle approximately an hour before he was found intoxicated on the trail. The officers observed empty bottles in his vehicle. They observed footprints in the snow leading away from his vehicle, which suggested that Madeiros had a zigzagging gait at that time. And, blood testing showed that Madeiros had a blood alcohol concentration of .164 several hours after he was apprehended. If we were reviewing the sufficiency of the admissible evidence to support a conviction, we would not hesitate to affirm.

¶57 However, a proper harmless error analysis does not turn on the strength of the State's case alone. We must also consider other factors, including the nature of the State's case, the nature of the defense, the importance of the erroneously admitted evidence, and its place in the State's case.

¶58 Here, the jury's assessment of Madeiros's credibility was central to the State's case and Madeiros's defense alike. Madeiros's defense was based on the State's inability to present witness testimony that he drank alcohol before driving that night, and it was supported by Madeiros's own testimony which, if credited, would have resulted in an acquittal. The State's case depended on the jury discrediting Madeiros's testimony, and instead believing the circumstantial evidence that it presented which suggested that Madeiros was intoxicated when he drove his vehicle that night. The State argues that Madeiros's testimony that he did not drink until after he abandoned his vehicle was "nonsensical" and "absurd," but the jury could have believed Madeiros's testimony and, if it had done so, it would have acquitted him of the OWI and PAC charges.

¶59    The erroneously admitted evidence of the June 2017 hit and run was a prominent feature of the State's case, and it allowed the State to significantly damage Madeiros's credibility through improper and unfairly prejudicial means. Based on the erroneously admitted evidence, the jury was invited to compare Madeiros's conduct on the night of the hit and run with his conduct on the night in question, and the jury might have naturally considered whether he acted in conformity with his prior criminal behavior on the night in question. The State's introduction of this inadmissible evidence created the risk that the jury would discredit Madeiros's testimony based on an inference about his propensity, rather than on the strength of the State's circumstantial evidence about his conduct on the night in question, and that the jury would convict him on the basis of that propensity inference.

¶60    Indeed, that is precisely how the prosecutor used the evidence of the June 2017 hit and run during the trial. During his closing argument, the prosecutor argued that Madeiros's testimony about what happened that night was not credible and should "offend [the jury's] intelligence." In so doing, the prosecutor asked the jury to "remember" that "[t]his is a person who is on probation for hit and run." In light of this information about Madeiros's character and propensity, the prosecutor argued that the jury should not believe Madeiros's testimony about his reasons for abandoning his vehicle, concluding his argument as follows:

> [Madeiros] was running away then [in June 2017, the night of the hit and run], he's trying to do the same thing [in December 2017]. He's trying to run away from being held accountable for his actions. This is the day he's held accountable. The running stops right here. I ask you to return verdicts of guilty on [all] three counts.

¶61    Based on our review of the record as a whole, we cannot say that, without the erroneously admitted evidence, the jury would have discredited

Madeiros's testimony and convicted him of the OWI and PAC charges. Accordingly, we cannot conclude beyond a reasonable doubt that the error was harmless. We therefore conclude that Madeiros is entitled to a new trial, and that evidence related to the June 2017 hit and run should not be admitted at that trial.[14]

*By the Court.*—Judgment and order reversed and cause remanded for further proceedings.

Not recommended for publication in the official reports.

---

[14] Because our conclusion that Madeiros is entitled to a new trial based on this erroneously admitted evidence is dispositive, we need not consider the additional arguments Madeiros makes concerning other errors allegedly committed by the circuit court or his trial counsel. The additional errors he alleges, which relate to whether a mistrial should have been granted after the prosecutor inadvertently presented inadmissible evidence to the jury and whether his trial counsel was constitutionally ineffective for failing to object to other evidence introduced by the State, are unlikely to recur at any trial following the remand.